Argued January 5; affirmed January 25, 1944

HODES *v.* HODES ET AL.

(145 P. (2d) 299)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY and HAY, Associate Justices.

*Leland F. Hess,* of Portland, for appellants.

*Barnett H. Goldstein,* of Portland, for respondent.

BELT, J. This is a suit to cancel and set aside a power of attorney and certain conveyances made thereunder, for the reasons: (1) That the power of attorney was procured by fraudulent representations made by the defendant David Hodes to his wife, the plaintiff herein; (2) that the conveyances were not made for the mutual benefit of the plaintiff and her husband, but were for the sole benefit of the latter; (3) that it was mutually understood and agreed between plaintiff and her husband that the power of attorney had terminated prior to the time of the execution of the conveyances in question. From a decree in favor of the plaintiff, defendants appeal.

Plaintiff and the defendant, David Hodes, who are of Jewish extraction, were born in Russia. Sarah came to this country—the land of hope and opportunity—when she was a small girl only fourteen years of age. When David came he was about ten years old. Sarah spoke only Yiddish but soon after landing in New York City attended night school for a few weeks and acquired a limited knowledge of English. The Ghetto—where the lessons of life are learned in the hard way—

was her home. After working in a tailor shop for a period of ten years, Sarah came to Portland, Oregon, where, in 1913, she married David Hodes. David, at that time, was a junk peddler in destitute circumstances. Sarah and David, however, were extremely frugal and industrious and soon began to accumulate property. David was not content to be a junk peddler very long. He engaged in the auto wrecking business and then sold tractors and other industrial equipment. He did everything to make money. That his efforts were not in vain is indicated by his financial statement to Dun & Bradstreet on May 10, 1940, showing a net worth of $65,000. The title to the real property in question was all in the name of the husband, with the exception of the home property (Lot 12, Block 2, in Laurelhurst, in the city of Portland) which was held by David and his wife as an estate by the entirety.

As a result of their marriage, five children were born, all of whom have now attained majority and, with the exception of one, have been educated in various colleges and universities in this country.

On February 13, 1939, the plaintiff executed a general power of attorney purporting to authorize her husband to "sell and convey, exchange or dispose, mortgage or hypothecate" any real property in which she had an interest. We think the evidence fairly discloses that, at such time, plaintiff had only slight knowledge of legal documents or instruments, and would not have been able to appreciate the significance and meaning of the terms used in the power of attorney had she been able to read the same. On the other hand, David Hodes was a shrewd, experienced business man. David, in de-

scribing how his wife happened to confer this authority upon him, thus testified:

"A. Mrs. Hodes wanted money; she wanted to go East. Just why I don't know. She woke up one day and she says she wants to go east right now fast. I had no money, I had nothing, and I had to suffer to get money. So after conversing this thing with her I told her that she should give me a power of attorney to deal with these properties and I would give her the necessary funds to go East, finance the trip, which I did. She rendered me these copies, gave them to me for that purpose, for that reason, because I wouldn't furnish the money, I wouldn't go out and borrow it for her—I had to borrow the money—unless I got something for it, and that is what I got."

It is clear from the evidence that plaintiff believed the power of attorney was executed for the purpose, as represented by her husband, of enabling him to sell a part of the 337-acre tract of land in Skamania county, Washington, but she never intended to confer general authority upon him. Sarah and her daughter went to New York for an extended visit with relatives. When they returned about four months later, Sarah asked her husband whether he had sold any property in Washington and he replied that he had been unable to do so. When asked about the power of attorney, Hodes said that he had torn it up. The instrument, however, was not destroyed. It was recorded on February 27, 1942—about three years after its execution—when, at such time, he first exercised any authority under it by making certain conveyances hereafter mentioned, which are now sought to be set aside.

We now advert to the marital troubles which arose between Sarah and David and which, in our opinion, caused the husband to perpetrate a fraud upon his wife.

On September 19, 1940, David instituted a suit for divorce against his wife. She contested the proceedings by filing a cross complaint for separate maintenance. On October 2, 1940, an order for temporary support money was entered. Defendant defaulted in payment and was brought into court in contempt proceedings. David paid. On November 5, 1941, after hearing on the merits, the court entered a decree in favor of the wife and required the husband to pay the sum of $150 per month for separate maintenance and support. It was also decreed that David pay the monthly instalments due on the mortgage covering the home property in Laurelhurst which was owned by them as an estate by the entirety. He was also required to pay the taxes on such property and to maintain insurance on the house. Again David defaulted in payment and contempt proceedings were brought on February 15, 1942, to compel him to comply with the decree of the court. He paid when the doors of the jail began to swing open.

While the divorce and separate maintenance proceedings were pending, the defendant, on October 25, 1940, incorporated the States Lumber Company with capital stock of $10,000, which was later increased to $25,000. David owned all the stock in this corporation except the qualifying shares. He was president and treasurer of the company. Indeed, he was the company. On the same day the power of attorney was recorded—February 27, 1942,—the defendant conveyed to States Lumber Company not only all the real property in his name but also the home property held by him and his wife as an estate by the entirety. He also caused a second mortgage on the home property to be executed by the company, naming him as mortgagee.

. On May 16, 1942, the O. W. Trading Company was incorporated by the defendant, with a capital stock of $25,000. Defendant was president. and treasurer of this company and owned all its stock except the qualifying shares. On May 28, 1942, while the instant suit was pending against David Hodes and States Lumber Company, David caused States Lumber Company to convey all the real property in question to the O. W. Trading Company. The minute book of the Trading Company discloses that the consideration for these conveyances was fixed in the sum of $20,000, which David received in the form of capital stock, notwithstanding title to the property purported to have been conveyed by the States Lumber Company. .       :

■ It is apparent from the record that David is guilty of a crude attempt to cover up his property for the purpose of circumventing the decree of the court and defrauding his wife out of her interests in the property which had been accumulated throughout the years as a result of their combined efforts and enterprise.

■ The circumstances surrounding the execution of the power of attorney are significant. Defendant testified that his wife went to the office of her nephew, A. E. Glickman, an attorney at law, to have him prepare the power of attorney and that, after it was so prepared, she signed it and gave it to him. The plaintiff says that it was her husband who went to her nephew's office to obtain such instrument and that David brought it to her for her signature. Glickman corroborated the testimony of the plaintiff concerning the transaction. A witness wilfully false in one part of his testimony is to be distrusted in others: Section 2-1001 O. C. L. A.

■ A fiduciary relationship of high degree exists between a husband and wife, and business transactions between them are carefully scrutinized by courts in order to prevent the wife from being overreached or defrauded: *Brown v. Hilleary,* 133 Or. 26, 286 P. 593; *Egr v. Egr,* 170 Or. 1, 131 P. (2d) 198; 26 Am. Jur. 876, Husband and Wife § 269; Pomeroy's Equity Jurisprudence (5th Ed.), Vol. 3, § 962b. In view of this relationship, the husband must deal with his wife in the utmost fairness and good faith. Especially it will not do, when acting as her agent, to exercise the authority conferred upon him for his own advantage and benefit. *Brown v. Laird,* 134 Or. 150, 291 P. 352, 73 A. L. R. 877. Indeed, § 63-211 O. C. L. A., authorizing a husband to act as attorney in fact for his wife, provides that the power thus conferred must be for their mutual benefit. Surely it can not reasonably be contended that the various conveyances above mentioned were made by David for the benefit of his wife.

We are convinced that the power of attorney was procured through fraud but, assuming that it was not so obtained, it does not follow that the transaction in question can be sustained. No rights of third parties are involved. If the plaintiff had the authority to create this agency, she had the authority to terminate it. In fact, she was led to believe that it had been terminated by the act of her husband. Why did he refrain from recording the instrument for a period of three years? What did he have in mind? Or was it, as he says, his "secret"?

■ Assuming that the power of attorney was executed, as David says, to enable him to procure funds with which to finance the trip of his wife and daughter to New York, the authority thus conferred upon him

would terminate when the purpose of the agency had been accomplished: 2 Am. Jur. 50, Agency § 56.

This case reeks with fraud. It is a clear abuse of a confidential or fiduciary relationship.

The decree cancelling and setting aside the various conveyances in accordance with the prayer of the amended complaint is affirmed. Plaintiff is entitled to costs and disbursements.