Argued December 18, 1952, reversed in part; modified and affirmed in part January 21, petition for rehearing denied March 4, 1953

# DAHLHAMMER and ROELFS *v.* SCHNEIDER

## EXECUTOR ET AL.

### 252 P. 2d 807

*B. G. Skulason,* of Portland, argued the cause for appellants.  With him on the brief was C. G. Schneider, of Portland.

*Sidney J. Graham,* of Portland, argued the cause for respondents and cross-appellants.  With him on the brief was Ben F. Forbes, of Portland.

Before BRAND*, Chief Justice, and LUSK, LATOUR-ETTE**, WARNER and TOOZE, Justices.

TOOZE, J.

This is a suit to cancel certain instruments of conveyance and to impress a trust upon the lands therein described, and for other relief, brought by George F. Dahlhammer and Edith R. Roelfs, as plaintiffs, against Bert E. Boice and Jane Doe Boice, husband and wife, and Comte & Kohlman Co., a corporation, as defendants. Two parcels of land are involved, both located in Multnomah county, Oregon, one designated as tract No. 1 and containing 15.54 acres, and the other designated as tract No. 2 and containing 8.9308 acres. The two tracts are contiguous. A decree was entered in favor of plaintiffs as to tract No. 1, and in favor of defendants as to tract No. 2. Defendants appeal, and plaintiffs cross-appeal.

On November 13, 1952, after this appeal had been perfected, defendant Bert E. Boice died testate in Multnomah county, and C. G. Schneider, as the duly appointed executor of the last will and testament of said decedent, has been substituted as a party. Also, on October 31, 1952, defendant Jane Doe (Lulu M.) Boice, wife of Bert E. Boice, died testate in Multnomah county, and Otto N. Bolen, as the duly appointed executor of the last will and testament of said decedent, has been substituted as a party.

Plaintiff George F. Dahlhammer, hereinafter referred to as George, and plaintiff Edith R. Roelfs, hereinafter referred to as Edith, are brother and sister, the son and daughter respectively of Benjamin F.

* Chief Justice when case was argued.
** Chief Justice when decision was rendered.

Dahlhammer and Pearlettie A. Dahlhammer, his wife, both now deceased. Defendant Comte & Kohlman Co., a real estate firm, is an Oregon corporation.

On April 4, 1926, Benjamin F. Dahlhammer was the owner and in possession of tract No. 1, and on said date Benjamin F. Dahlhammer and Pearlettie A. Dahlhammer, his wife, were owners as tenants by the entirety and in possession of tract No. 2.

Benjamin F. Dahlhammer died intestate in Multnomah county, Oregon, on April 4, 1926, leaving surviving him as his sole and only heirs at law his widow, Pearlettie A. Dahlhammer, his son George, then 18 years of age, and his daughter Edith, then 7 years of age.

Pearlettie A. Dahlhammer, widow, married defendant Bert E. Boice at Gresham, Oregon, on June 15, 1927.

■ On February 11, 1929, Pearlettie A. Boice filed her petition in the circuit court for Multnomah county, probate department, for letters of administration upon the estate of Benjamin F. Dahlhammer, deceased. On the same day, said estate was admitted to probate, and the petitioner Pearlettie A. Boice was duly appointed administratrix thereof. Her bond as such administratrix was fixed at $500, and her husband Bert E. Boice became surety thereon. An inventory and appraisement of the property in said estate was was made on February 23, 1929, and filed April 29, 1929. The only property of the estate consisted of tract No. 1, appraised at the value of $7,740. Of course, upon the death of Benjamin F. Dahlhammer, title to tract No. 2 immediately vested in Pearlettie A. Dahlhammer, widow, by right of survivorship as a tenant by the entirety.

On January 10, 1930, the plaintiff George, then over 21 years of age, duly executed a quitclaim deed which conveyed to his mother, Pearlettie A. Boice, all his right, title, and interest in and to tract No. 1. Plaintiffs seek to have this conveyance cancelled and set aside.

As the basis of their claim for cancellation of the quitclaim deed, plaintiffs allege in their complaint that the execution thereof by George was induced and procured by reason of certain alleged false representations made to said plaintiff by his mother and the defendant Bert E. Boice. The evidence wholly fails to establish any fraud or misrepresentation on the part of either the mother or the defendant Boice. To the contrary, the record affirmatively shows by George's own testimony that he knew precisely what he was doing, and that the execution of the deed was his own free and voluntary act.

We have given careful consideration to all the testimony in the record respecting the claim of the plaintiff George to an interest in tract No. 1, and conclude that his contention is wholly without merit either in fact or in law. His undivided one-half interest in and to tract No. 1, as an heir at law of Benjamin F. Dahlhammer, deceased, passed to his mother by virtue of the quitclaim deed, subject only to the dower right of the widow and the expenses of administration of the estate. No ground whatever exists for setting that deed aside.

On May 9, 1929, Pearlettie A. Boice filed a petition in the estate of Benjamin F. Dahlhammer, deceased, for authority to sell tract No. 1 at private sale, setting forth in the petition that this land constituted the sole asset of the estate, and that funds were required to pay the expenses of the last illness and funeral of

the decedent and the costs and expenses of administration. On May 9, 1929, one C. J. Lundquist was duly appointed guardian ad litem of Edith, then 10 years of age, in conjunction with the proceeding for the sale of the property.

No order was made by the court at the time the petition was filed. On February 6, 1930, a supplemental petition for the sale of the property was filed. In that petition it was pointed out that George had no further interest in the land, and that the petitioner and Edith were the sole tenants in common thereof.

On March 5, 1930, the court entered an order for the sale of the property at private sale and requiring a surety bond in the sum of $7,500. By supplemental order dated July 24, 1930, the court authorized the filing of a bond on such sale with one or more personal sureties, in the sum of $15,000, in lieu of a surety bond. This latter bond was executed and filed, with defendant Bert E. Boice as surety thereon. The terms of sale were provided in the order of March 5 as follows: ·

"And it is further ordered that said sale be made in the following terms, to-wit: two thirds cash and the balance of one-third by giving a note payable five years from date bearing interest at five per cent per annum, and secured by a first mortgage on said real property (Tract # 1)."

On August 7, 1930, Pearlettie A. Boice, as administratrix, filed her written report of the property sale. The report set forth that notices of sale had been posted and published as required by law, proofs of such posting and publishing being attached. The report then stated as follows:

"That on the 6th day of August, 1930 the said real estate was sold at private sale to Bert E. Boice

for the sum of $7740.00, the appraised valuation thereof, the said Bert E. Boice being the highest, best and only bidder therefor, and the said sum being the highest and best sum bid therefor.

"That the said sale was made upon the following terms, to-wit: $5740.00 in cash, and $2000.00 by giving a mortgage on the premises so sold, payable on or before five years from date of sale, and bearing interest at the rate of five per cent per annum payable annually."

On August 30, 1930, the court entered an order confirming said sale.

The administratrix filed her final account in said estate on September 22, 1930. In this report she showed total receipts as follows: Cash received from the sale of real property: $5,740; note secured by first mortgage on said real property: $2,000,—total: $7,740. Total disbursements in the sum of $2,015.46 were itemized, leaving a net balance in the estate of $5,724.54 for distribution.

Also in this final account the administratrix asked to have her dower right in the proceeds of the sale of said real property admeasured and assigned to her, and alleged that her dower right was of a reasonable value equivalent to one-third of the net thereof.

On December 4, 1930, the court entered an order approving the final account, and in said order it found and declared that one-third of the net proceeds in said estate was a reasonable and proper amount to be allowed the administratrix as her dower interest therein. The order then provided:

"That the dower interest of Pearlettie A. Boice, the surviving widow, of the deceased be admeasured and assigned to her in the sum of one-third of the net proceeds of the sale of the real property of the

estate, to-wit, one-third of $5724.54, or the sum of $1908.18.

"3. That the remaining portion thereof, $3816.36, be divided equally between the said Pearlettie A. Boice and Edith R. Dahlhammer, share and share alike."

A final order closing the estate was entered on September 23, 1932. Prior to the entry of this final order, the administratrix filed in said estate two receipts as follows: (1) Receipt dated May 6, 1932, signed by Pearlettie A. Boice and acknowledging receipt from Pearlettie A. Boice, as administratrix, of the sum of $3,816.36, "as full settlement of my distributive share in the said Estate of B. F. Dahlhammer, Deceased"; and (2) receipt dated May 6, 1932, signed by Pearlettie A. Boice, as guardian of Edith R. Dahlhammer, a minor, and acknowledging receipt from Pearlettie A. Boice, as administratrix, of the sum of $1,908.18, "In full settlement of the distributive share of Edith R. Dahlhammer, in the estate of B. F. Dahlhammer, deceased."

On July 2, 1932, by order of the circuit court for Multnomah county, probate department, Pearlettie A. Boice was appointed guardian of the person and estate of Edith R. Dahlhammer, then 13 years of age.

On May 6, 1932, Bert E. Boice and Pearlettie A. Boice, his wife, executed a promissory note in the sum of $1,908.18, payable July 15, 1937, in favor of Pearlettie A. Boice, as administratrix of the estate of B. F. Dahlhammer, deceased, and bearing interest at 5 per cent per annum, and also a first mortgage covering tract No. 1 to secure the payment of said note. The note and mortgage were assigned by the administratrix to herself as guardian of Edith R. Dahlhammer, a minor, and represented Edith's distributive share of her father's estate. The administratrix so reported

to the court. The order appointing the guardian required her to post a surety bond in the sum of $2,500. However, to avoid the expense of securing a surety bond, the guardian, by order of the court, deposited the note and mortgage with Portland Trust and Savings Bank of Portland; thereupon, the court reduced the amount of the guardian's bond to $250, pursuant to the provisions of § 22-1221, Oregon Code 1930 (§ 40-1221, OCLA). Bert E. Boice became surety on that bond.

On December 7, 1933, the guardian filed her first annual report in the guardianship estate showing receipt of $95.41 as interest on the note and expenditures in the total amount of $529, which included a charge of $360 for board of the minor and a further charge of $100 as expenses for a trip to Kansas. On December 5, 1934, the second annual report was filed, showing receipt of $73.75 as interest and expenditures in the total amount of $442, which included a charge of $360 for board. On December 16, 1935, the third annual report was filed, showing a cash receipt of $55.31 and expenditures totalling $626.69, which included a charge of $360 for board and a further charge of $250 as doctor and hospital expenses incident to a mastoid operation upon the minor. On January 12, 1937, the fourth annual and final account of the guardian was filed, showing total receipts by the estate in the sum of $2,156.42 and a total disbursement of a like sum. On March 29, 1938, the court entered an order approving the final account. In this order the following appears:

> "It further appearing to the court that the said note and mortgage has been fully paid through advancement made for the said minor for her support and education, and that the makers of the

said note and mortgage are now entitled to a satisfaction thereof * * *.''

The court then ordered that the note and mortgage be surrendered, cancelled, and satisfied. Thereafter, the guardian reported a compliance with the order, and on April 14, 1938, the court entered a further order closing the guardianship and discharging the guardian and her bond from further liability.

We now advert to additional transactions between Pearlettie A. Boice and her husband, Bert E. Boice.

On August 30, 1930, Pearlettie A. Boice, as administratrix, executed a deed conveying tract No. 1 to Bert E. Boice, pursuant to the sale made and confirmed in the estate of Benjamin F. Dahlhammer, deceased. On May 6, 1932, Bert E. Boice and Pearlettie A. Boice, his wife, executed two deeds, by one of which they conveyed tract No. 1, and by the other, tract No. 2, to one Amy E. Cooper. On the same day Amy E. Cooper, a single person, executed a quitclaim deed conveying both tracts to Bert E. Boice and Pearlettie A. Boice, husband and wife. In addition to being the owner of tract No. 1, Bert E. Boice owned other lands in the states of Oregon and Washington. At or about the time the Cooper deeds were executed, other deeds were exchanged covering additional lands owned by Bert E. Boice, so that title thereto became vested in him and his wife as tenants by the entirety.

On August 3, 1942, while the parties were residents of Clark county, state of Washington, Bert E. Boice and his wife Pearlettie entered into a community property agreement, by the terms of which it is provided: ''we do hereby mutually agree, one with the other, that all of the property which we now own, separately,

jointly or otherwise, whether real, personal or mixed, and wheresoever situated, shall be by us and all other persons whomsoever, deemed, esteemed, regarded, treated and known as community property, belonging to the community composed of ourselves as husband and wife.'' The agreement also provided that upon the death of either all such property should become the sole property of the other by right of survivorship. This agreement was duly witnessed and acknowledged at Vancouver, Washington, and recorded August 4, 1942, in Clark county records.

Pearlettie A. Boice died October 4, 1943. In the spring of 1944 Bert E. Boice married Annie Boice, hereinafter referred to as Annie. They were divorced in 1948 by decree of a California court. Boice later married Lulu Boice, who was his wife at the time this suit was commenced. Boice had children of his own, the issue of a marriage prior to his marriage to Pearlettie.

In 1948 Boice decided to improve tracts No. 1 and 2 and subdivide them for sale in small tracts. Pursuant to this plan, he and Annie conveyed the two tracts to Earl Boice, brother of Bert. Thereafter, Earl and his wife conveyed the land to Comte & Kohlman, a corporation, the real estate firm selected by Bert Boice to carry out his program. Boice, prior to the commencement of this suit, had expended approximately $5,000 in improvements for subdivision purposes. The effect of the institution of this suit was to stop all operations in connection with that project.

The record discloses that very close and friendly relations existed between Boice and plaintiffs at all times prior to the death of Pearlettie. These friendly relations seemed to terminate after Boice's marriage

to Annie. Edith testified that her final "set-to" with her stepfather occurred on her wedding day, May 20, 1944, in a dispute regarding a wedding ring formerly owned by Edith's deceased sister.

As disclosed by his own testimony, Bert E. Boice did not actually pay any money into the estate of Benjamin F. Dahlhammer, deceased, as a part of the purchase price of tract No. 1, but he and his wife did execute the note and mortgage hereinabove mentioned. Furthermore, although the evidence does not disclose who paid the expenses of the last illness and funeral of Benjamin F. Dahlhammer and the costs of administration of his estate, as shown in the final account of the administratrix, nevertheless, those costs and expenses were paid by someone; presumably by the administratrix out of her own funds. However, the cash noted in the final account of the administratrix as receipts from the sale of tract No. 1 was in truth merely a paper transaction.

But at the time of the sale by the administratrix and when her final account was filed and approved, no one was interested in the estate except herself and her daughter Edith. She acknowledged receipt of her share of the estate, and, as before observed, Edith's share purportedly was represented by the note and mortgage constituting the guardianship estate.

In passing, we make note of the fact that no one has questioned the reasonableness of the value placed on tract No. 1 at the time of the inventory and appraisement, nor at the time of its purported sale to Boice. Presumably, therefore, the land was then worth $7,740 and no more. It is needless to point out that its value has materially increased since that time.

In a memorandum opinion the able trial judge, in speaking of tract No. 2, said:

"That the title to Parcel II being vested, at the time of his death, in the said deceased father, Benjamin F. Dahlhammer, and in the latter's then wife, Pearlettie A. Dahlhammer, the mother of plaintiffs, as an estate by the entireties, the said surviving widow and mother, as the survivor of the two grantees, named in the entirety deed, became, automatically, upon the death of her husband, the owner thereof, to do with the same as she pleased, and that plaintiffs had and have no equitable or other right or interest therein; * * *."

The decree of the court is in keeping with the foregoing finding. On this appeal plaintiffs attack the title of Boice to tract No. 2 upon the ground that the conveyances whereby his interest as a tenant by the entirety in the land was created were void, because, as they assert:

"A fiduciary relationship existed between Pearlettie Dahlhammer Boice and her husband, appellant, Boice, and in view of that relationship there is a presumption of undue influence and the duty was upon the appellant to establish that the gift was a free and voluntary act of the mother of these respondents and cross-appellants, and that the transaction was fair and equitable."

Plaintiffs contend that Boice failed to meet that burden of proof, citing the following cases to support their position: *Fouchek et al. v. Janicek,* 190 Or 251, 261, 225 P2d 783; *Legler et al. v. Legler,* 187 Or 273, 311, 211 P2d 233; *Evans et al. v. Anderson,* 186 Or 443, 470, 207 P2d 165; *Unterkircher v. Unterkircher,* 183 Or 583, 590, 195 P2d 178; *Gilliam v. Schoen,* 176 Or 356, 363, 157 P2d 682; *Ramstead v. Bridges,* 175 Or 182, 190, 152 P2d 306; *Hodes v. Hodes,* 173 Or 267, 273, 145 P2d 299; *O'Connell v. O'Connell,* 162 Or 411, 420, 91 P2d 1107.

■ The general rule enunciated in these cases is well expressed in *Jenkins v. Jenkins*, 66 Or 12, 17, 132 P 542, as follows:

> "A gift obtained by any person standing in a confidential relation to the donor is *prima facie* void, and the burden is thrown upon the donee to establish to the satisfaction of the court that it was the free, voluntary, unbiased act of the donor. A court of equity, on the grounds of public policy, watches such transactions with a jealous scrutiny, and to set them aside it is not necessary to aver or prove actual fraud, or that there was such a degree of infirmity or imbecility of mind in the donor as amounts to legal incapacity to make a will or execute a valid deed or contract   *   *   *."

However, in *Egr v. Egr et al.*, 170 Or 1, 131 P2d 198, and *In re Knutson's Will*, 149 Or 467, 41 P2d 793, the court suggested that it was never safe to infer fraud from the mere fact that the donee possessed the confidence of the donor. In *Legler et al. v. Legler,* supra, at page 311, Mr. Justice ROSSMAN states as follows:

> "*   *   * The chances are that every kind, considerate, dutiful wife possesses the confidence of her husband. Gifts are made, not to enemies, but to those who have won the donor's esteem, affection, good will or confidence. As was said in Bliss v. Bahr, 161 Or 79, 87 P2d 219:
>
>> " 'It is not the existence of the confidential relationship alone that constitutes undue influence, but it is the wrongful use thereof which invalidates the conveyance.' "

■ Manifestly, a confidential relationship existed between Pearlettie and her husband, Bert E. Boice. Their marriage was a happy and successful one. They reposed in each other the utmost trust and confidence, but from that it does not follow that the conveyance of tract No. 2, the sole property of Pearlettie, to Amy

E. Cooper and its reconveyance to Pearlettie and her husband, as tenants by the entirety, was the result of any coercion, undue influence, or fraud, practiced upon the wife by the husband. On the contrary, the evidence clearly establishes that this transaction was fair, regular, and but one of the steps taken by the parties to carry out their mutual plan to create a tenancy by the entirety in all lands owned by either or both of them. Moreover, the transfer of an interest in tract No. 2 to defendant Boice did not constitute a gift. Boice gave a valuable consideration therefor when he transferred to his wife a similar interest in separate lands owned by him. As to these transactions, the intent of Boice and his wife is well expressed in the community property agreement as follows: "in consideration of the love and affection which we each bear, one toward the other, and further in consideration of the mutual helpfulness we have been, one to the other in the past, and for and in consideration of the co-mingling of our joint efforts and earnings and properties heretofore, we do hereby mutually agree    *    *    *."

The several conveyances involving tract No. 2 were valid, and upon the death of Pearlettie A. Boice defendant Bert E. Boice, as the surviving tenant by the entirety, became the sole owner of said land. This conclusion disposes of plaintiff's cross-appeal.

The effect of the trial court's decree was to cancel, set aside, and hold for naught the administratrix's deed conveying tract No. 1 to defendant Boice, together with all subsequent conveyances affecting the title to said land. The court decreed plaintiffs to be the owners in fee thereof.

On this appeal defendants maintain that the court erred in entering the decree it did as to tract No. 1, basing their contention upon several grounds, viz.:

(1) that defendant Boice is the owner of the real property in question; (2) that plaintiffs are estopped by their inequitable conduct and by their laches from maintaining this suit; and (3) that the probate proceedings in the Dahlhammer estate and the guardianship proceedings are valid, conclusive and binding on the plaintiffs.

It is the position of plaintiffs that the sale of tract No. 1 by the administratrix was a void sale because, as they claim, it was indirectly a sale to herself. Section 19-824, OCLA (Oregon Code 1930, § 11-630), provides in part as follows:

"* * * All purchases of the property of the estate by an executor or administrator, however made, whether directly or indirectly, are prohibited, and if made are void."

We have said that an executor or administrator is held to strict compliance with this section of the Code. *Acton v. Lamberson*, 102 Or 472, 202 P 421, 202 P 732. In that case we held as invalid a sale to the administrator's wife, the facts disclosing that the pretended sale was made directly for the benefit of the administrator. At page 490 of 102 Or, we said:

"* * * While the fact that a reconveyance to the administrator would perhaps be conclusive evidence that the sale was made for his benefit, we do not think that is the only manner of showing that a sale is made by an administrator indirectly for his own benefit."

The record in the instant case falls short of establishing intentional fraudulent purpose on the part of the administratrix or her husband. Both acted pursuant to the advice and under the direction of the attorney for the estate. No law prohibited a bona fide purchase of the land by Bert E. Boice, though because he

was the husband of the administratrix and also surety on her bond, a sale to him is subject to close scrutiny. Ordinarily, it might be presumed that the probate court gave it such scrutiny before entering its order of confirmation. According to the report of sale, Boice was the only bidder at the sale, and he bid the full appraised value of the property. The sale was ostensibly made to secure funds for the payment of debts and expenses of the estate, a necessary and legitimate purpose. § 19-805, OCLA (Oregon Code 1930, § 11-605). The formalities required by statute in connection with such a sale were fully complied with; a complete report thereof was made to the court.

■ However, the only information before the court that the purchaser had bid and paid the cash necessary to be paid on the sale was contained in the report of sale and the final account. The sworn statements therein contained did not accord with the fact. The only part of the purchase price that could possibly be considered as having been paid by Boice was the note and mortgage above mentioned. The remainder of the purchase price was represented by the interest of the administratrix, as the widow of the decedent, in the estate. It ensues, therefore, that she in truth paid the greater portion of the purchase price. In effect, the situation is no different than it would have been had she advanced the cash to her husband to make the purchase. The later conveyances by which the administratrix became a tenant by the entirety with her husband in tract No. 1 warrant the conclusion that the original sale to Boice was fictitious and in truth was an indirect sale to the administratrix, and was so intended, in violation of the express provisions of § 19-824, OCLA, supra. Insofar as the application of the statute is concerned, it is immaterial that the administratrix

was not actuated by a fraudulent purpose. It follows that the administratrix's sale was void.

■ This sale being void, every other transaction stemming from it is void. The stream cannot rise above the spring. Therefore, the purported assignment of dower in the alleged net proceeds of the sale is also void. Hence, under the facts of this case, there never was an admeasurement and assignment of dower in tract No. 1.

Under the law the administratrix, as widow of the deceased, was entitled to dower, or the use during her natural life of one-half of tract No. 1. § 17-101, OCLA (Oregon Code 1930, § 10-301). She was entitled to have her dower admeasured and assigned to her. § 17-201, OCLA (Oregon Code 1930, § 10-308).

■ Prior to the assignment of her dower, the widow has no vested estate; her right is not a legal title; she is not seized of any part of her deceased husband's lands, and her right is for most purposes nothing more than a mere right of action to have an assignment of dower. *Callan v. Western Inv. & Hold. Co.*, 157 Or 412, 423, 72 P2d 48; *Walters v. Waggener et al.*, 104 Or 682, 689, 208 P 753; 28 CJS, Dower, 144, § 67b.

■ The death of Pearlettie A. Boice without assignment of dower in tract No. 1 terminated her right thereto. 28 CJS, Dower, 152, § 71.

■ The note and mortgage executed by Bert E. Boice and his wife, which purported to represent a portion of the purchase price, were of no effect. Though the subsequent guardianship proceedings are not directly attacked in this suit, nor are they subject to collateral attack *(Anderson, Adm. v. Clough et al.,* 191 Or 292, 299, 230 P2d 204), nevertheless, the record thereof does evidence the fact they they constituted but another step in the plan to divest Edith of her

interest in tract No. 1 as an heir at law of her deceased father, and the further fact that Edith did not receive any such interest; the guardianship proceedings are wholly abortive insofar as barring Edith's interest in the land is concerned.

It follows therefore, that upon the closing of the estate of Benjamin F. Dahlhammer, deceased, title to tract No. 1 remained in Pearlettie A. Boice and Edith, as tenants in common, share and share alike.

Under the facts of this case and particularly in the light of the several conveyances and writings herein-above referred to, title to an undivided one-half interest in tract No. 1 vested in Bert E. Boice upon the death of his wife, Pearlettie, by right of survivorship.

It remains to consider whether Edith is estopped to now claim her interest in tract No. 1 because of alleged laches. Edith became 21 years of age in 1940, or three years before her mother died. She waited until 1950, or a little more than six years after her mother's death, before instituting this suit. However, according to her testimony, she was entirely ignorant as to the proceedings in the estate of her deceased father and as to the guardianship proceedings until after she had conferred with her attorney in the late fall of 1949. By the promises of her mother, made prior to the mother's death, and by assurances given her by the defendant Boice that she would in the future receive her full interest in her deceased father's estate, Edith was in a way lulled into a false sense of security. We cannot say, all the facts and circumstances considered, that she is barred by laches from asserting her claim herein.

Mere lapse of time does not of itself con-stitute laches, although long delay in asserting a claim is an important element of laches. Mere delay will

not ordinarily bar relief where it has not worked injury, prejudice, or disadvantage to the defendant or others adversely interested. *McIver v. Norman,* 187 Or 516, 544, 205 P2d 137, 213 P2d 144, 13 ALR2d 749; 30 CJS, Equity, 531, § 116.

■ Furthermore, lapse of time will not bar relief where circumstances exist which excuse the delay and render it inequitable to interpose the bar. 30 CJS, Equity, 543, § 120. We are of the opinion that such circumstances exist in this case and that defendant Boice did not sustain any substantial or irreparable injury or prejudice because of Edith's delay in commencing this suit.

■ The record does reveal, however, that defendant Boice, proceeding upon the theory that he was the sole owner of tract No. 1, did expend substantial sums of money in 1948 and 1949 in the improvement of it for subdivision purposes. Edith, from her own observation, knew, or should have known, that these improvements were being made. She registered no objection. We are of the opinion that the equities of the situation demand that Boice be given credit for those expenditures, one-half thereof being chargeable against the undivided one-half interest of Edith in said tract No. 1. Such a credit will eliminate any damage or injury Boice may have sustained.

In the various proceedings and written instruments involved in this litigation the Christian name of Mrs. Boice is not always spelled the same. At times it is spelled "Pearlettie", and at other times "Pearllettie". To avoid confusion, we have used "Pearlettie" throughout this opinion, without reference to how the name is actually spelled in the instrument or transaction discussed.

The decree of the trial court is modified as follows:

1. That the plaintiff Edith R. Roelfs be and she is decreed to be the owner of an undivided one-half interest in fee of the land described in the pleadings as "Parcel 1", situated in Multnomah county, Oregon, and more particularly described as follows:

"All that part of the N.W. ¼ of the N.W. ¼ of Section 8, T 1 S, R 3 E of W.M., which lies south of an east and west line running 48.92 rods south of the North boundary line of said Section 8 and containing 15.54 acres.

"Also that certain tract of land described as beginning at the N. E. corner of the Nathaniel Hamlin Donation Land Claim in Sec. 8, T 1 S. R 3 E of W. M. thence Southerly tracing the east boundary line of said Donation Land Claim 324.75 ft. to a point, thence westerly tracing a line parallel to the South boundary line of the N. W. ¼ of the N. W. ¼ of said Section 8, 316.65 ft., more or less to a point in the west line of said Section 8; thence northerly tracing the west boundary line of said Section 8 to the point where the said section line intersects the north line of the said Nathaniel Hamlin Donation Land Claim, thence Easterly tracing the said north line of the Nathaniel Hamlin Donation Land Claim to the point of beginning."

This interest shall be subject to a lien in favor of defendant Boice, or his successors in interest, for the repayment of one-half of the expenditures made by said defendant in the improvement of said parcel of land in 1948 and 1949.

2. That plaintiff George F. Dahlhammer be and he is decreed to have no right, title, interest, or estate in and to parcel 1 nor parcel 2, as particularly described in the pleadings, and that, as to said plaintiff, this suit be dismissed with prejudice.

The cause is remanded to the trial court with directions to hold a hearing for the purpose of determining the amount of money expended by defendant Boice in the improvement of parcel 1 and decreeing that one-half thereof shall be and become a lien upon the undivided one-half interest of the plaintiff Edith in said tract, to secure the payment thereof by said plaintiff to defendant Boice, or his successors in interest.

The decree of the trial court in favor of the plaintiff George F. Dahlhammer is reversed; subject to the foregoing modifications, the decree is in all other respects affirmed.

Neither party to recover costs.