Submitted on record and briefs May 7, affirmed July 23,
petition for rehearing denied September 9, 1970

OLIPHANT, *Appellant, v.*
FRENCH ET AL, *Respondents.*
472 P2d 275

Brown, Smith & Robinson, Grants Pass, for appellant.

Johnson, Sloan & Jordan, Grants Pass, for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER, SLOAN, DENECKE, HOLMAN, TONGUE and HOWELL, Justices.

McALLISTER, J.

Plaintiff brought this suit in equity to establish his ownership of a one-half interest in certain real property in Josephine County and to compel defendants to convey that interest to him. The trial court found for defendants and plaintiff appeals.

The following facts were established by clear and convincing evidence. In 1944 plaintiff was part owner and manager of the Esterly Mine near Cave Junction in Josephine County. He learned that certain real property nearby was to be sold by the county for unpaid taxes. On a trip to Los Angeles he asked a friend, Edward D. French, a California attorney whom he had known for some years, if he, French, would like to "go

in fifty-fifty" on the purchase of this property. French said he was short of cash, but knew two other men who would be interested in such an investment. Those men, whose names are not disclosed by the record, were contacted and put up the money to finance the purchase.

Plaintiff, with the money furnished by the two California investor-partners, purchased two parcels of property, one known as the Osgood property near Takilma and the other as the Josephine mining property, herein called the Josephine tract, which is the property involved in this suit. The Osgood property contained 220 acres and was purchased for $580. The Josephine tract contained slightly more than 80 acres and was purchased for $220. Josephine County gave plaintiff receipts dated June 19, 1944, showing the payment by him of the purchase price of each tract in full, plus a $3 transaction fee in each case. Title to both tracts was taken in the name of E. D. French by deeds dated June 20, 1944.

Plaintiff testified without equivocation that he and French told their investor-partners only about the purchase of the Osgood property and did not inform them that $220 of their money had been used to purchase the 80-acre Josephine tract. Although the record does not disclose just what story was told to the investor-partners, they were apparently led to believe that all of their money was used to purchase the Osgood property.

French paid the taxes on both properties and from time to time plaintiff and the two investors each reimbursed French for one-fourth of the taxes on the Osgood tract. Plaintiff reimbursed French for one-half of the taxes on the Josephine tract.

The Osgood tract was sold in late 1959 or early 1960 for about $5,500 and French divided the proceeds with his partners, plaintiff and the widows of the two silent investors, both of whom had died in the meantime.

French continued to hold title to the Josephine tract until his death in September 1961. That property was inherited by his three sons, who are the defendants in this suit.

There is no doubt that French held title to the Josephine tract for the benefit of himself and plaintiff in equal shares. French in his own handwriting expressly acknowledged plaintiff's one-half interest in the Josephine tract as follows:

"Description of Real Property held in name of E. D. French, owned by him & R. F. Oliphant, in undivided ½ interests acquired June 20, 1944 by deed of Josephine County * * *.

[Description omitted.]

"Recorded at P. 502 of Vol. 104—Deed Records of Josephine County, Oregon."

The defendant Errol French, a lawyer, at first disputed plaintiff's claim, but, when furnished a photocopy of the above memorandum, wrote as follows:

"Thank you for your various letters concerning the property in which R. F. Oliphant, your brother, claims an interest. The photocopy of the memorandum in my father's handwriting was most welcome regarding the claim.

"I am most willing to acknowledge Mr. R. F. Oliphant's ½ interest in the property described in the memorandum of E. D. French. * * *"

The declaration by French of his trusteeship, quoted above, is amply corroborated by other letters

written by him which it is not necessary to describe in detail in this opinion. When the trial ended in the court below the learned judge said: "There isn't any question in my mind, gentlemen, but what Mr. Oliphant and Mr. French had some kind of an arrangement between them concerning the ownership of this property." We fully agree with the conclusion expressed by the trial court at that time.

■ Although, for reasons discussed below we affirm the trial court's decree, we do not agree with the finding below that plaintiff was guilty of laches. In *Hanns v. Hanns*, 246 Or 282, 304-305, 423 P2d 499 (1967) we approved the following definition of laches:

> " '* * * [N]eglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done, resulting in a disadvantage to the other party.' 30A CJS 19, 20, Equity § 112."

and went on to say:

> "It is to be emphasized that laches does not result from delay alone, but from unreasonable and unexplained delay in asserting rights which has resulted in disadvantage or prejudice, making it inequitable to afford the relief sought against a party asserting laches as a bar thereto. *Dahlhammer and Roelfs v. Schneider Exec.*, 197 Or 478, 252 P2d 807 (1953)."

Although plaintiff did not bring this suit until more than 20 years after French took title to the Josephine County tract we think that delay was neither unreasonable nor unexplained. We are satisfied from the evidence that French never at any time disputed plaintiff's interest in the Josephine tract, but, on the contrary, on all occasions acknowledged that plaintiff owned a one-half interest therein.

Even after French's death the defendant Errol French both acknowledged plaintiff's interest and also received and cashed plaintiff's check covering one-half of the 1961 taxes. It is not clear when the heirs of Edward D. French repudiated plaintiff's claim, but it must have been after the quoted letter written by Errol French on June 26, 1963. The original complaint in this case was filed February 2, 1965. There was no unreasonable or unexplained delay on the plaintiff's part.

■ Although a constructive trust was established we are impelled to affirm on other grounds. We find that because plaintiff has not come into court with clean hands he is not entitled to equitable relief. According to his own testimony, the property in which he claims an interest was purchased for the sole benefit of himself and French using funds furnished for the purchase of other property. This was done without the knowledge or consent of the men who provided the money. Plaintiff's testimony on cross-examination leaves no doubt as to this concealment.

"Q Was all of the money that was paid for the two pieces of property the money that was put up by these people?
"A Yes.

\* \* \* \* \*

"Q Was it made very clear to these people that they were to get no interest in the property you are suing for here?
"A Had no connection with it. We were dealing with one piece of property, 220 acre Osgood property at Takilma. There was no mention made to them of the other piece at all.

"Q There was no mention made of the property you are suing about here?
"A No.

"Q They were simply told if they put up the money to pay the taxes on the Osgood property—
"A Not pay the taxes, to buy it.

\* \* \* \* \*

"Q If they would put up the money to buy the Osgood property, then they would get a half interest in it?
"A The deal that was put up to them, if they would put up the money that they would get half interest in 220 acres of the Osgood property at Takilma, which they agreed to take, and which was later sold at a nice profit for them.

"Q Were they told that they were putting up the money to buy both pieces of property?
"A They were not."

In short, it appears from plaintiff's own testimony that his agreement with French was to secretly purchase the Josephine tract and hold it for themselves, using for this purpose money furnished for the purchase of the Osgood property to be owned jointly by all the parties. All the parties were co-participants in a joint adventure; plaintiff and French had a duty of loyalty and full disclosure, which they failed to observe. Instead, they took part of the common funds and invested them in the hope of securing profit to themselves alone. See *Carey v. Hays*, 248 Or 444, 449, 434 P2d 331 (1967); *McIver v. Norman*, 187 Or 516, 522-523, 536, 205 P2d 137, 213 P2d 144, 13 ALR2d 749 (1949); *Thimsen v. Reigard*, 95 Or 45, 54-55, 186 P 559 (1920).

██ Equity will refuse to aid a plaintiff whose claims had their inception in his own wrongdoing, whether the victim of that wrongdoing was the defendant, *Casteel v. King et al*, 201 Or 234, 269 P2d 529 (1954), or a third party. *Thompson v. Spint*, 247 Or 484, 430 P2d 1014 (1967); *Robinson et ux v. Manning et al*, 233 Or

392, 378 P2d 277 (1963); *Lyon v. Mazeris et al*, 170 Or 222, 245-247, 132 P2d 982 (1943); Fadeley, *The Clean-Hands Doctrine in Oregon*, 37 Or L Rev 160, 171-173. And where both parties to a suit, or those under whom they claim, participated in the wrong, equity will refuse its aid to either, leaving the parties as it finds them. *Thompson v. Spint*, supra; *Barnhisel v. Watters*, 138 Or 8, 17, 4 P2d 316 (1931).

Plaintiff has asked the help of a court of equity to obtain his share of the fruits of an agreement he had no right to make. For the reasons stated above, he is not entitled to that help. The decree of the trial court is affirmed.