Argued May 3, affirmed October 4, 1973

TAYLOR ᴇᴛ ᴀʟ, *Respondents, v.* JACKSON,
*Appellant,* JACKSON ᴇᴛ ᴀʟ, *Respondents,*
LOHMAN, *Intervenor-Appellant.*

514 P2d 548

*Keith Burns,* Portland, argued the cause for appellant Margaret B. Jackson. With him on the brief was Jane Edwards.

*Vincent G. Robeson,* Lake Oswego, argued the cause and filed briefs for appellant Robert Lohman.

*Rodney C. Adams,* Beaverton, argued the cause for respondents Taylor and Hilton. With him on the briefs was Jon B. Lund of Thompson, Adams & Lund.

*Donald N. McGiffin* of Myatt, Bolliger & Hampton, P.C., Beaverton, argued the cause and filed briefs for respondent Dallas Jackson.

McALLISTER, J.

This is a suit for the dissolution of a joint venture in a real estate development and for an accounting. The trial court dissolved the joint venture and directed that its assets be sold and the profits divided, 50 per cent to plaintiff Taylor, 25 per cent to plaintiff Hilton, and the remaining 25 per cent to be divided equally between defendant Dallas Jackson and his former wife Margaret Jackson. The defendant Margaret Jackson appeals, claiming that she is entitled to a larger share of the profits. The intervenor Robert

Lohman appeals from that portion of the decree denying his claim for additional attorney fees.

This controversy arose out of the purchase and attempted development of a tract of about 26 acres on the outskirts of Hillsboro. Eight acres of the tract were in the city and the balance outside the city limits. Margaret Jackson and her husband Dallas found the property and wanted to purchase it for development. They were unable to finance the transaction and contacted Frank Hilton, who, with his wife, had participated with the Jacksons in a prior real estate venture with each family having a 50 per cent interest. Hilton agreed to join with the Jacksons in purchasing the Hillsboro property. He was to furnish the money and the Jacksons were to do the development work, particularly having the eight acres in the city rezoned to permit the construction of condominiums. There was no written agreement between the Hiltons and the Jacksons concerning the purchase of the Hillsboro property.

The initial step in acquiring the property was taken on July 6, 1968, by the signing of an earnest money agreement providing for the sale of the property on contract by the defendants William and Ruth Enschede to the Hiltons and Jacksons for $55,000. $500 was paid by Hilton as earnest money and $11,500 was to be paid at closing. The contract of sale was to provide for payments of $400 per month. The earnest money agreement named Frank and Doris Hilton, husband and wife, and Dallas and Margaret Jackson, husband and wife, as purchasers, but the agreement was never signed by Doris Hilton. The sale was contingent upon the purchasers being able to have the eight acres within the city limits rezoned for multiple

family dwellings and upon their securing construction financing.

The purchasers, with a substantial contribution of effort by Margaret Jackson, obtained the zone change. Soon thereafter, the Enschedes began to press for an early closing of the transaction. The purchasers did not have the $11,500 due at closing and it was necessary for Hilton to borrow that money, which he was able to do only on a short term basis.

On March 31, 1969, Hilton and Dallas Jackson executed a document entitled "Memorandum of Agreement of Joint Venture", which recited that Frank Hilton and Dallas Jackson were owners of the 26-acre parcel, that Hilton had undertaken to provide the financing and had borrowed the $11,500 for six months. The agreement provided that unless the $11,500 was returned to Hilton within five months, Hilton would have the exclusive right to sell the property for the benefit of the joint venture and that the proceeds of the sale, after repayment of the $11,500 and other costs would be "divided equally between the parties." The document made no mention of either Margaret Jackson or Doris Hilton.

The purchasers then tried to find a buyer for the rezoned eight-acre tract. They did not find a buyer, but found the plaintiff Taylor, who agreed to become a joint venturer in the development of the property. On April 10, 1969, a joint venture agreement was executed by Taylor, Hilton, and Dallas Jackson, which provided that Taylor would own a one-half interest in the joint venture and its property for which he was to pay $20,000 in cash to Hilton and Jackson and to assume liability with Hilton and Jackson for the contract balance of $43,000 due the Enschedes.

Hilton and Jackson were to own the other one-half interest in the joint venture. The agreement further provided that Taylor, a builder, would construct condominiums on the property under a cost-plus contract and that all net profits of the venture would be divided one-half to Taylor and one-half to Hilton and Dallas Jackson. Again, neither Margaret Jackson nor Doris Hilton were mentioned in this agreement.

Shortly thereafter the Enschedes executed and placed in escrow two contracts and two deeds. One contract covered the property inside the city limits. That contract showed Taylor, Hilton, and Dallas Jackson, joint venturers, as the purchasers and the deed deposited with this contract named those three men and their wives as grantees. The contract recited a total purchase price of $55,000 for the property, acknowledged receipt of the $12,000 which had been paid and required the payment of the balance of $43,000 in monthly instalments as provided in the earnest money agreement. The second contract covered only the portion of the property outside the city limits, showed Dallas Jackson and Frank Hilton, joint venturers, as the purchasers and named those two men and their wives as grantees in the deed deposited with the second contract. The second contract recited no consideration and provided for no payments, but contained an addendum providing that the deed to the second tract would be delivered when the first contract covering the property inside the city had been fully performed.

The Jacksons, who had been having marital difficulties, separated in early 1970. In February 1970 they executed a property settlement agreement reciting that they owned "an interest" in the Enschede property and agreeing "that Husband and Wife shall hold their

interests in said properties as tenants in common and both Husband and Wife hereby agree to execute any and all documents necessary to effect such interest in common". The agreement covered both the portion of the property inside the city limits as well as the remainder of the Enschede tract. Following the divorce and pursuant to the property settlement agreement Dallas Jackson assigned to Margaret an undivided one-half interest in his rights to the Enschede contracts.

Since the divorce Mrs. Jackson has refused to cooperate with the other parties in matters concerning the property and has claimed that she owns a one-third interest in all the Enschede property in addition to the share assigned to her by Dallas Jackson pursuant to the property settlement agreement and that she has been defrauded of her rights in the property. Because of her conduct and claims plaintiffs brought this suit.

Mrs. Jackson did not attend the trial and contends that the trial court erred in refusing to admit in evidence when offered as a part of her case her deposition which had been taken by the other parties during pre-trial discovery proceedings. We find it unnecessary to decide whether the trial court erred in refusing to consider the deposition because we have elected to read the deposition and have given Mrs. Jackson's testimony full consideration in our de novo review of this case.

■ Mrs. Jackson's principal contention is that the court erred in decreeing that she owned only the interest in the property assigned to her by Dallas Jackson, namely a one-half interest in his 25 per cent interest in the joint venture. We completely agree with the trial court's finding, but have some reservation about the manner in which its conclusion was reached.

The trial court apparently assumed that Margaret Jackson's interest and presumably Doris Hilton's interest in the property was divested when their husbands executed the joint venture agreement of March 31, 1969, and that Margaret Jackson's twelve and one-half per cent interest was restored to her only by the assignment from her husband executed pursuant to the divorce decree.

From our review of the evidence we are inclined to the view that when Jackson entered into the joint venture agreement with Hilton on March 31, 1969, and the subsequent joint venture agreement with Hilton and Taylor on April 10, 1969, he was representing not only himself, but his wife Margaret and her interests. Although he nominally dealt with the property as his own, we think he was in fact acting in part as his wife's agent. Jackson at all times recognized that he and Margaret owned their portion of the property in equal shares.

Margaret bases her claim to a one-third interest in the property on the unexplained happenstance that Doris Hilton did not sign the earnest money agreement, although she was named therein as one of the purchasers. We attach no importance to this detail. The evidence proves beyond doubt that the Hiltons were to be equal partners with the Jacksons in this venture and whether Frank Hilton held title in his own name or jointly with his wife did not change that basic relationship. It is unnecessary to detail the evidence proving that the Hiltons and Jacksons were equal partners in this venture, but the evidence is conclusive.

Mrs. Jackson also contends that the court erred in finding that Taylor was entitled to share in that portion of the Enschede property outside the city

limits. As we have pointed out above, Hilton and Jackson attempted to sell Taylor a one-half interest in the rezoned eight acres and to retain the remaining 18 acres as a profit for themselves. So long as they kept the two transactions separate Hilton and Jackson had a perfect right to sell Taylor a one-half interest in the city property at whatever price he was willing to pay and to hold the remainder of the property as their own. However, Hilton and Jackson chose, probably because of their limited resources, to commingle the two transactions. They took a down payment from Taylor for a one-half interest in the city property and then induced him to join with them in a contract with the Enschedes obligating him to pay the balance due on all of the property, including the 18 acres outside the city. Taylor thus became jointly liable with the Hiltons and Jacksons to pay the Enschedes $43,000 which was the full balance due for the entire 26-acre tract. Taylor's liability was not limited to one-half of the $43,000. In order to protect his interests he had to pay Jackson's share of several of the monthly payments due under the contract. Taylor also became incidentally concerned about the payment of a $1,500 note given by Dallas Jackson for a tractor that the Enschedes insisted be included as a part of the deal.

■■ We agree with the trial court that when Hilton and Jackson induced Taylor to join in their contract with Enschedes they owed him a duty of full disclosure. They had a duty to disclose to Taylor that the money which he obligated himself to pay the Enschedes was not only paying for the eight-acre tract, but was also paying for an additional 18 acres which Hilton and Jackson intended to keep for themselves. Hilton and Jackson had no right to keep for themselves as a secret profit a part of the property which Taylor was helping

them to purchase under a contract about which he was not informed. *Oliphant v. French,* 256 Or 341, 347, 472 P2d 275 (1970).

Both Hilton and Jackson conceded at the trial that Taylor was entitled to a half interest in the 18-acre portion of the Enschede property. We agree and reject Mrs. Jackson's attack on this portion of the decree.

We need not detail Mrs. Jackson's conduct which seriously hampered the joint venture in carrying on its business in an orderly manner and endangered the successful development of this housing project. We need only note our agreement with the trial court that the dissolution of the joint venture was proper.

We find no merit in the appeal of the intervenor Lohman. As a lawyer he represented the Hiltons and the Jacksons in the early stages of this housing development. He was to receive a portion of the profits as his fee. The trial court found that the fee earned by Lohman based on the sale to Taylor was paid and that before any further fee was earned Lohman's employment was terminated by mutual agreement. We concur in these findings and agree that Lohman is not entitled to any additional fee.

The decree of the trial court is affirmed.