Argued and submitted May 11, 1992, reversed and remanded in part; otherwise affirmed May 12, 1993

ASSOCIATION OF UNIT OWNERS
OF THE INN AT OTTER CREST,
an unincorporated association,
and Otter Crest Corporation,
an Oregon corporation,
*Appellants,*

*v.*

FAR WEST FEDERAL BANK,
a federally chartered bank,
Consolidated Shelter, Inc.,
an Oregon corporation,
Consolidated Resorts, Limited,
an Oregon limited partnership,
Consolidated Development Company,
an Oregon limited partnership,
Consolidated Holdings, Limited,
an Oregon limited partnership,
Otter Rock Water Services Company,
an Oregon limited partnership,
and Otter Rock Development Company, Inc.,
an Oregon corporation,
*Respondents,*

ASSOCIATION OF UNIT OWNERS
OF THE INN AT OTTER CREST,
an unincorporated association,
and Otter Crest Corporation,
an Oregon corporation,
*Third-Party Plaintiffs - Appellants,*

*v.*

SAFECO TITLE INSURANCE COMPANY
OF OREGON,
an Oregon corporation,
*Third-Party Defendant - Respondent.*

(CV 83-1702; CA A64383)

852 P2d 218

Phil Goldsmith and Christopher James, Portland, argued the cause for appellants and third-party plaintiffs - appellants. With them on the briefs were Arno H. Denecke, Roger K. Harris and James & Denecke, Portland.

Barbee B. Lyon, Portland, argued the cause for respondents and third-party defendant - respondent. With him on

the brief were Jeanne M. Chamberlain and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

**RIGGS, J.**

This is an action concerning certain property interests in the Inn at Otter Crest (the Inn), a condominium/resort development in Lincoln County, Oregon. Plaintiffs include the Association of Unit Owners (AUO), made up of current condominium owners, and the Otter Crest Corporation (OCC), an Oregon corporation that purchased or leased most of the disputed facilities after defendants threatened to shut them down in 1981. Defendants are Far West Federal Bank (Far West), the mortgagee of the development, the Consolidated Defendants,[1] and SAFECO Title Insurance Company (SAFECO), third-party defendant.[2] We refer to Far West and Consolidated Defendants collectively as defendants. On defendants' motion, the trial court dismissed plaintiffs' complaint as untimely and then denied plaintiffs' motion to file a fourth amended complaint. Plaintiffs appeal, assigning error to both rulings. We reverse.

■  In reviewing the granting of a motion to dismiss, we assume the truth of all allegations, as well as any inferences that may be drawn, and view them in the light most favorable to the nonmoving party. *Machunze v. Chemeketa Community College,* 106 Or App 707, 712, 810 P2d 406, *rev den* 312 Or 16 (1991).

The history of this case involves several documents describing various property interests and vesting those interests in various parties. However, the only question presented now is the timeliness of plaintiffs' action. We address each of plaintiffs' several claims in the order presented. We begin with a discussion of the relevant facts.

West Shore Land Co. (West Shore) was the owner in fee of 87 acres of land in Lincoln County. Condominium Land

---

[1] This group of defendants includes Consolidated Shelter, Inc., Consolidated Resorts, Ltd., Consolidated Development Co., Consolidated Holdings, Ltd., Otter Rock Water Services Co., Otter Rock Development Co., Inc. and Hayden Corp. (dba Tualatin Development Corp.). These are Oregon corporations, their subsidiaries, Oregon partnerships, and a Delaware corporation. They are the successors in interest to the original developers of the Inn at Otter Crest.

[2] SAFECO sold title insurance to both AUO and defendant Otter Rock Development Company (ORDC). Plaintiffs filed a third party complaint against SAFECO because SAFECO refused to accept the title insurance claims of either AUO or ORDC.

Company (CLC) was the owner in fee of 22 acres of land directly southeast of and adjoining West Shore's property. In 1971, West Shore and CLC executed a lease (the 1971 lease) to Condominiums Northwest, Inc. (CNI), encompassing the entire 22 acres owned by CLC and approximately 40 adjoining acres of West Shore's 87 acre parcel. The 1971 lease provided that CNI could develop and sell units in a condominium resort and, upon completion of the development, required CNI to assign its interests and rights in the lease to the AUO. All of the individual units and core facilities (the restaurant, lounge and convention facilities) were built on the 40 acres leased from West Shore. The water treatment, storage and transportation facilities were built on land leased from Boise Cascade Corp., to the east of and adjoining the development. In December, 1971, Boise Cascade granted an easement to CNI and West Shore for permanent access to those facilities. The sewage treatment plant, a water storage tank and water lines were all built on land that was owned by West Shore, but not subject to the ground lease.

In May, 1972, the parties executed an amendment to the 1971 lease (the 1972 lease amendment) changing the legal description of the land being leased. The amendment deleted the 22 acres owned by CLC,[3] deleted approximately 3 acres in the northeast corner, and added a 3 acre parcel to the northwest corner. On the same day, CLC filed the Declaration of Unit Ownership (Declaration).[4] The Declaration contained, *inter alia,* a description of the land, a description of the general common elements and the limited common elements and a description of the property interests retained by the developer. The Declaration described the subject land as "[a] leasehold estate * * * in the real property set forth and described in Exhibit R, * * * made a part hereof." The Declaration defined the general common elements, of which each condominium owner acquired a percentage, to include "the lessee's interest in and to that certain lease between West Shore Land Company, * * * and [CLC] * * * dated February,

---

[3] CLC had transferred title to the 22 acres to its wholly owned subsidiary, McMillan Inns, a month before the lease amendment was executed. That change in ownership has no bearing on the issues presented in this case at this time.

[4] In 1971 and 1972, Oregon's Unit Ownership law was codified at ORS chapter 91. The law has been amended and renumbered several times and is currently codified in ORS chapter 94.

1971." The description of the land in the 1971 lease is different from the description of the land in Exhibit R, and both of those are different from the description of the land in the 1972 lease amendment.

In 1973, Far West foreclosed on the mortgages it held on the development.[5] Far West purchased the foreclosed assets of CLC at the foreclosure sale and continued to operate the development in the same manner as CLC. In 1979, Far West sold all of its interests in the Inn to Consolidated Shelter, Inc. (CSI). Immediately after this sale, there were several transfers of various property interests in and around the Inn among CSI and its subsidiaries and partners (aka the Consolidated Defendants). The details of those transfers are not important to our analysis. The only other transfer of concern occurred in January, 1981, when OCC purchased or leased most of the disputed facilities after the Consolidated Defendants threatened to shut the Inn down.

Plaintiffs' first claim is for a declaratory judgment of the parties' respective rights in the real and personal properties that comprise the Inn. In their complaint, plaintiffs allege that they own fee and/or lessee interests in the lands described in the 1971 lease, and in "all the improvements constructed on such property * * * and adjacent property connected as to use, with all tenements, hereditaments, and appurtenances thereunto belonging." Plaintiffs further allege that their property interests extend to the administration and maintenance buildings, all sewer and water facilities and the restaurant and convention center at the Inn. The pleadings show that plaintiffs' claims are based on representations made by CNI and West Shore, the prospectus for the development, the documents referenced in that prospectus, sales literature, sales agreements signed by unit purchasers and the Declaration. A reasonable inference from the allegations of plaintiffs' complaint is that, before 1980, when Consolidated Defendants asserted ownership and control over the

---

[5] After each individual unit was sold and the Declaration filed, Far West released each unit and its percentage interest in the common elements from the blanket mortgages it held on the development. *Former* ORS 91.570. The parties agree that Far West's foreclosure action did not affect the unit owners' interests in their units or their percentage of the common elements.

disputed properties, the Inn was operated according to plaintiffs' understanding of the ownership interests they claim. In plaintiffs' view, their cause of action arose in 1980 when defendants asserted an adverse claim to the properties at issue.

Defendants argue that plaintiffs' cause of action arose in 1972. They interpret the Declaration as reserving to the developer (and to them as the developer's successors in interest) all ownership rights in the disputed properties. Defendants reason that, as the successors in interest to the developers, those ownership rights should now belong to them. Thus, defendants argue, plaintiffs' cause of action arose when the Declaration was filed in 1972 and they were put on notice that there were "possible problems" with their title.

■■ If constructive notice of conflict of title were sufficient to start a time limit running, then defendants would be correct that plaintiffs' cause of action arose in 1972, but that is not the rule in Oregon. A property owner who has record notice of "possible problems" with the owner's title may, but is not required to, bring an action to eliminate those problems. *Meier v. Kelly*, 22 Or 136, 138, 29 P 265 (1892). When a property interest is actually repudiated or challenged, or an adverse claim is asserted against that interest, the property owner is obligated to act within a reasonable time to protect the owner's interests. In the face of such a challenge, an action unreasonably delayed is time barred, because to allow it would result "in injury, prejudice or disadvantage" to the party against whom the action is brought. *Dahlhammer and Roelfs v. Schneider Exec.*, 197 Or 478, 498, 252 P2d 807 (1953). There are many Oregon cases applying that rule, but we discuss only one.

In *Oliphant v. French*, 256 Or 341, 472 P2d 275 (1970), Oliphant purchased an undivided one-half interest in certain real property, and French purchased the other one-half interest. The record title was in French's name only. The parties shared equally the tax burden and other expenses of maintaining the property until 20 years later when French died. Title to the property passed to French's sons, who disputed Oliphant's interest in it. Oliphant sued in equity to establish his one-half interest. Although the case was filed

more than 20 years after Oliphant had constructive notice of "possible problems" with his title, the Supreme Court ruled that his action was not time barred, because French had never disputed his interest in the property, and the property had been managed according to Oliphant's understanding of his interests in it.

■     Even if plaintiffs had constructive notice of conflicts in their title, a reasonable inference from the allegations made in their complaint is that the Inn was managed and operated consistently with their understanding of their property interests until Consolidated Defendants assumed all of Far West's interests in 1980. It was not until then that an adverse claim was asserted against plaintiffs' interests, and it was not until then that plaintiffs' action to protect their interests accrued. We now determine whether that cause of action was timely filed.

■■     Because this claim is in equity, the doctrine of laches applies. Statutes of limitations for analogous actions at law are relevant to "define a presumptively reasonable period within which one is not guilty of laches." *Oregon State Bar v. Wright*, 309 Or 37, 42, 785 P2d 340 (1990), *cert den* 498 US 829 (1991). An action to determine an interest in land is brought within "a presumptively reasonable period of time" if it is filed within 10 years from when the cause of action arose. ORS 12.040; ORS 12.140.[6] Plaintiffs' cause of action arose in 1980 and the case was filed in state court in 1983. That is well within the "presumptively reasonable period of time" for an action to quiet title. Plaintiffs are not guilty of laches and their first cause of action is not time-barred.

■     Plaintiffs' second claim is entitled "Claim for Relief to Impress Constructive Trust and Declaratory Relief." In it they allege that, by virtue of the 1973 foreclosure, Far West became partners with them in the "joint venture" of the operation of the Inn. As a result of that alleged partnership, Far West owed plaintiffs fiduciary duties, which it breached

---

[6] For the sake of clarity, we note that a failure to bring the action within that time period does not result in an automatic bar to litigation. If the complaint discloses on its face that the suit was commenced after the "presumptively reasonable period of time" has lapsed, then the plaintiff bears the burden of pleading facts in avoidance of laches. *Oregon State Bar v. Wright, supra*, 309 Or at 43, 785 P2d 340 (1990); *McIver v. Norman*, 187 Or 516, 545, 205 P2d 137, 213 P2d 144 (1949).

by several actions culminating in the sale of the disputed property interests to Consolidated Defendants in 1979. Plaintiffs also allege that Consolidated Defendants had a confidential relationship with plaintiffs by virtue of Consolidated Defendants' claimed acquisition of the disputed property interests in 1979. In their prayer for relief, plaintiffs requested, *inter alia*, a declaration that the 1973 foreclosure was void, and an order requiring Far West and Consolidated Defendants to hold all of the disputed properties in a constructive trust for plaintiffs' benefit. Whether plaintiffs' claim for breach of fiduciary duty is time-barred depends on when it arose and whether it is based on a special, noncontractual relationship, or on a contractual relationship among the parties. *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 258, 611 P2d 1158 (1980).

If the basis of the claim is non-contractual, then the two-year statute of limitations applies. ORS 12.110(1). If, however, the claim is contractual, then the six-year statute of limitations applies. ORS 12.080(1). The pleadings allege a "joint venture" in the operation of the Inn, but they do not allege any specific contract or other relationship with defendants that gives rise to the fiduciary duties that were allegedly breached. Because we cannot determine from the face of the pleadings whether the relationships and duties were of a contractual or non-contractual nature, we cannot determine which statute of limitations applies or whether dismissal was proper. We remand for findings on that issue.

Plaintiffs captioned their third claim for relief "Breach of Covenants, Damages and Constructive Trust." The thrust of the claim is that, in January, 1981, Consolidated Defendants asserted that they held all property interests in the disputed properties and were under no obligation to donate those properties to the operation of the Inn or to the benefit of AUO. Based on that assertion, Consolidated Defendants threatened to immediately shut down the operation of the disputed properties pending a sale to third parties,[7] unless plaintiffs purchased and leased those properties. To keep the Inn operating, plaintiffs made purchase and lease

---

[7] The pleadings do not indicate whether there were third parties interested in purchasing the disputed properties, or whether the shutdown would be indefinite while Consolidated Defendants sought out interested third parties.

agreements with Consolidated Defendants for the disputed properties and have continued to make payments under those agreements. Plaintiffs allege that Consolidated Defendants' assertion of interests in the disputed properties to the exclusion of AUO, and the forced sale and lease, constitute breaches of covenants contained in the 1971 lease, the 1972 lease amendment and the Declaration. As a remedy, plaintiffs pray for the imposition of a constructive trust against Consolidated Defendants, the corpus of that trust being all the monies plaintiffs have paid under the sale and lease agreements.

■■ Plaintiffs concede that the claim sounds in contract. The nature of the relief sought generally determines whether a claim is an action at law or a suit in equity. *McClory v. Gay*, 45 Or App 561, 608 P2d 1213 (1980). However, a claim solely for money based on an express or implied contract is an action at law, *Powell v. Sheets*, 196 Or 682, 251 P2d 108 (1953), and, where the gravamen of a complaint is that the defendant failed to abide by a contractual duty, the complaint sounds in contract. *Amfac Foods v. Fred Snyder Roof, Inc.*, 43 Or App 107, 110, 602 P2d 321 (1979), *rev den* 289 Or 209 (1980).

■ ■ The statute of limitations for contract claims is six years. ORS 12.080(1). The cause of action for breach of contract accrues when the contract is breached. *Alderson v. State of Oregon*, 105 Or App 574, 580, 806 P2d 142 (1991); *Kantor v. Boise Cascade Corp.*, 75 Or App 698, 703, 708 P2d 356 (1985), *rev den* 300 Or 506 (1986). If independent injuries were caused by independent acts, each act is a separate breach and the statute of limitations begins to run separately as to each alleged breach. *Alderson v. State of Oregon, supra*, 105 Or App at 580.

■ Plaintiffs allege that, in January, 1981, Consolidated Defendants breached certain covenants and conditions in the 1971 lease, the 1972 lease amendment and the Declaration. Plaintiffs first alleged those breaches in their second amended complaint, which they filed on May 15, 1989, more than six years after the cause of action had accrued. Although they allege ongoing harm in the form of payments due under the sale and lease agreements, they do not allege that the breach itself is ongoing. Consequently, unless the claim

relates back to the filing of the original complaint, or to the first amended complaint,[8] it is time-barred.

ORCP 23C governs the relation back of amended pleadings and provides in part:

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

The issue is whether the breach of contract claims plaintiffs first asserted in their second amended complaint arose out of the "conduct, transaction, or occurrence" set forth in the original or first amended complaint. Neither plaintiffs' original complaint nor their first amended complaint alleged a cause of action against Consolidated Defendants arising out of the 1981 sale and lease of the disputed properties. Therefore, plaintiffs' third claim does not relate back and is time-barred.

Plaintiffs' fourth claim is entitled "Declaratory Judgment - Abatement of Purchase Price," and it relates to their first claim for a declaratory judgment of the disputed property interests. The claim alleges that plaintiffs have made regular payments to Consolidated Defendants based on the January, 1981, sales agreement for certain of the disputed properties. The claim further alleges that, in that agreement, Consolidated Defendants represented that they held all legal and equitable interests in the properties and were able to convey them to plaintiffs pursuant to the agreement. Plaintiffs then allege that, if the court grants plaintiffs a declaration of their property interests as prayed for in the first claim, Consolidated Defendants could not convey those properties to plaintiffs according to the sales agreement. Accordingly, plaintiffs are entitled to abatement of the purchase price and restitution of monies paid on the sales agreement. Unlike the third claim, this claim is not based on a breach of contract. It is an equitable claim much like their first claim, and is timely for the same reasons that their first claim is timely.

---

[8] Both the original complaint and the first amended complaint were filed in August, 1983.

Plaintiffs' third-party claims were properly dismissed for want of prosecution.

■ Lastly, we address plaintiffs' argument that the trial court abused its discretion in denying their motion to file a fourth amended complaint. We note that this case has a long procedural history, beginning in federal district court, and that plaintiffs' third amended complaint is actually their ninth attempt to file a sufficient complaint. We do not consider that the trial court abused its discretion in denying the motion to file yet another amended complaint.

Reversed and remanded on first, second and fourth claims for relief; otherwise affirmed.