Argued and submitted April 13, affirmed June 22, petition for review denied
October 4, 1994 (320 Or 217)

Margaret Rose MYERS,
*Respondent,*

*v.*

Margaret Rose WEEMS,
*Appellant.*

(16-92-08199; CA A80446)

876 P2d 861

George W. Kelly argued the cause and filed the briefs for appellant.

Donald J. Churnside argued the cause for respondent. With him on the brief was Gaydos, Churnside & Walro, P.C.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant appeals from a judgment setting aside a deed. On *de novo* review, we affirm.

Defendant is plaintiff's daughter. In 1986, the parties executed and recorded a deed purporting to create joint ownership of real property that plaintiff had owned individually.[1] The parties agree that defendant did not give any consideration for the transfer. In 1992, plaintiff brought this action, seeking to cancel the deed. The trial court granted judgment in favor of plaintiff.

Defendant assigns error to the trial court's conclusion that plaintiff's claim was not barred by laches. "The elements of laches are delay by a party, with knowledge of relevant facts under which it could have acted earlier, to the substantial prejudice of the opposing party." *Ellis v. Roberts*, 302 Or 6, 10, 725 P2d 886 (1986). Substantial prejudice can be either a disadvantageous change in position or loss of witnesses or critical documentary evidence caused by the plaintiff's delay. *Rise v. Steckel*, 59 Or App 675, 685, 652 P2d 364, *rev den* 294 Or 212 (1982). The party asserting laches has the burden of demonstrating that each element exists. *Warren and Joeckel*, 61 Or App 34, 38, 656 P2d 329 (1982).

Even assuming that laches applies in this case, and that its first two elements are met, we conclude that any delay by plaintiff in seeking to set aside the deed did not substantially prejudice defendant. Defendant argues that she was substantially prejudiced because she "volunteered her time and money to keep the house in repair for some time after the execution of the deed." Defendant testified that she improved the property by contributing labor and materials from 1962 to 1988. Defendant argues that she would not have volunteered her time and money if she had known that the deed would be canceled. We cannot tell from the record what efforts defendant made towards improving the property after the deed was executed, or whether she received anything of value from plaintiff for those efforts.[2] We conclude that

---

[1] The parties used a form deed that purported to create a tenancy by the entirety with the right of survivorship.

[2] There is evidence in the record that, after the deed was recorded, plaintiff gave defendant several thousand dollars, with no promise by defendant to pay it back.

defendant did not demonstrate that she suffered a disadvantageous change in position as a result of plaintiff's delay in bringing this action.[3]

Defendant's next assignment is that the trial court erred in finding that the transfer was not a gift.[4] An *inter vivos* gift requires a present intent by the donor to make a gift that goes into effect immediately, delivery of the thing given or a document evidencing ownership to the donee and acceptance of the gift by the donee. *Johnson v. Steen*, 281 Or 361, 369, 575 P2d 141 (1978); *McLaughlin and McLaughlin*, 65 Or App 429, 431, 671 P2d 740 (1983), *rev den* 296 Or 350 (1984). A gratuitous transfer of land from a parent to a child is presumed to be intended as a gift. *Ingersoll v. Ingersoll*, 263 Or 376, 379, 502 P2d 598 (1972). Defendant argues that plaintiff failed to rebut that presumption. Plaintiff contends the evidence shows that, at the time the deed was executed in 1986, she did not intend to transfer a present interest in the property and that, therefore, the deed was revocable. To resolve the parties' dispute, we examine the evidence of plaintiff's intent to pass an interest in the property to defendant.

Plaintiff testified that she signed the deed in order to avoid "probate and [the] terrible taxes [defendant] told me about. It would be easier for her after I left." Next, she testified that she could not remember all of the papers that she had signed and that she trusted defendant "to do the best for me and to avoid all this fuss and bother so the children would get the property when I passed away." When asked whether she intended to give *any* present interest in the property to defendant at the time the deed was recorded, plaintiff answered, "No." Further, plaintiff testified that defendant did not have any involvement in the property after the parties recorded the deed. Plaintiff also testified that she

---

[3] Defendant does not argue that there has been a loss of witnesses or critical documentary evidence.

[4] The trial court also found that the transfer was the product of undue influence, and that defendant was estopped from asserting any interest in the property. Because of our disposition of defendant's first assignment of error, we need not discuss the merits of the trial court's alternative findings. However, we note that the gist of plaintiff's fourth "count," which is denominated "Estoppel," is equitable estoppel. That is not a cause of action. *See Howell v. Oregonian Publishing Co.*, 82 Or App 241, 728 P2d 106 (1986).

was unaware that, after signing the deed, she could not sell the property without defendant's cooperation and that defendant's creditors could place a lien on the property. Finally, plaintiff insisted that she signed the deed only because defendant "talked her into it." In context, plaintiff's testimony shows that she signed the deed to effect some future transfer of the property.

Defendant contends that other evidence shows plaintiff intended the transfer to be a gift. First, defendant testified[5] that plaintiff had previously promised to give her the property. When questioned about the reasons why plaintiff signed the deed, however, defendant said that "[s]he was putting the property in my name and hers for two reasons: One, to, I believe, avoid probate taxes so it would be passed easily; and, two, to ensure that I would, you know, get the house." In context, defendant's testimony shows that plaintiff intended that someday defendant would *inherit* the property. Further, when asked why she thought the transfer was a gift, defendant said:

> "Well, I don't know if I'd call it just a gift. The right of legacy, the right of family. One works for their parents and survives them."

That testimony is consistent with plaintiff's contention that she did not have a present intent to make a gift.

Next, defendant contends that plaintiff's testimony that she "changed her mind" about the deed shows that the transfer was a gift. When asked by defendant's counsel what caused plaintiff to bring this action, plaintiff testified:

> "Well, I changed my mind about [the deed]. * * * I got to the point where I could not trust [defendant]. I did not want her on my checking account or nothing. And so that's when I started thinking about getting [defendant] off the deed."

Defendant argues that plaintiff's testimony shows "[t]he decision to undo the deed was a 'change' from a previously held position * * * and the 'previously held position' was that the deed was a gift rather than a testamentary disposition, otherwise it would not matter that [plaintiff] could no longer

---

[5] Defendant did not testify at trial. We take defendant's testimony from her deposition.

trust [defendant]." We do not agree with that conclusion. The fact that plaintiff decided to set aside the deed does not necessarily lead to the conclusion that she originally intended the transfer to be a gift. We conclude that the parties' testimony shows that plaintiff intended the deed to be a testamentary device, not a gift.

Defendant next argues that the facts in this case are similar to those in *Halleck v. Halleck*, 216 Or 23, 337 P2d 330 (1959), and require a similar result. In *Halleck*, a father deeded property to a third party, who then deeded the property back to the father and the plaintiff, the father's son.[6] After the deeds were recorded, the father kept possession of them and the property. A few years later, the father executed a will purporting to devise all of his property to the defendant, his wife. After the father died, the plaintiff brought an action in ejectment. There was evidence that the father had told the defendant and others that the original transaction was designed to avoid probate and with the idea that he could "get the instruments back if he asked for them." 216 Or at 32. There was also evidence, however, consisting of three letters, of the father's intent to pass a present interest in the property to the plaintiff. The Supreme Court, on *de novo* review, concluded that the evidence showed that the father "intended to create in himself and his son present concurrent interests with a provision for survivorship." 216 Or at 35.

Defendant is correct that this case has some facts that are similar to those in *Halleck*. In *Halleck*, however, the father was not alive to testify about his intent in the transaction that created a co-ownership with his son. Here, plaintiff testified that she did not intend to give defendant a present interest in the property at the time that the deed was executed and recorded. Defendant's own testimony suggests that she viewed the transfer as a means of inheriting her mother's property. We conclude that the evidence rebuts the presumption that the transfer of the property was a gift. The transaction was intended to confer no present interest in defendant. Her beneficial interest was to take effect on plaintiff's death.

Affirmed.

---

[6] It is apparent from the facts in *Halleck* that the transfer to the third person was a device to effect a co-ownership interest between the father and his son.