Argued and submitted December 4, 2000, affirmed July 11, 2001

Beverly G. HILTERBRAND;
Durene A. Cantrell; and C. Kenneth Cantrell,
*Respondents,*

*v.*

Denis CARTER;
Neil D. Stanfield; Shawn Carter; Tony Carter;
Bob Green; Robin Carroll; and Joey E. Carter,
*Appellants,*

*and*

Matthew STANFIELD;
Peter Stanfield; Stephen Stanfield;
Gloria Weber; Calvin Stanfield,
as substituted by Vonda Stanfield;
and John York, as trustee of R. Irene Stanfield Trust
and as personal representative of
the Estate of R. Irene Stanfield, deceased,
*Defendants.*

96-CV-0030; A107276

27 P3d 1086

Christopher L. Cauble argued the cause for appellants Shawn Carter, Tony Carter, Bob Green, Robin Carroll and Joey E. Carter. Clayton Patrick argued the cause for appellants Denis Carter and Neil D. Stanfield. With them on the brief were R. Daniel Simcoe and Schultz, Salisbury, Cauble & Dole.

Frank C. Rote, III, argued the cause for respondents. With him on the brief was Brown, Hughes, Bird & Rote.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Plaintiffs brought this action to determine their interest in real property. The trial court held that plaintiffs' action was timely, that the grantor had conveyed her land to herself and plaintiffs as joint tenants with the right of survivorship, and that the grantor could not later unilaterally revoke the contingent remainder that she had given plaintiffs. Defendants appeal. We affirm.

This case arises out of a dispute over a parcel of real property that Irene Stanfield (mother) owned and operated as a mobile home park. In 1976, two of mother's children, Beverly Holbrook and Durene Cantrell, and their spouses (plaintiffs) moved onto the park to help mother operate it. In 1978, mother executed a deed in which she conveyed her interest in the property to herself and plaintiffs as joint tenants with the right of survivorship. The deed, which was properly recorded with the county clerk's office, provided that mother would own the property

> "in joint tenancy with Tommy J. & Beverly G. Holbrook and C. Kenneth & Durene A. Cantrell * * * not as tenants in common but with the right of survivorship * * *.
>
> "* * * * *
>
> "* * * [T]he grantees herein do not take title in common but with the right of survivorship, that is, that the fee shall vest absolutely in the survivor of the grantees."

In 1983, mother recorded a document entitled "Correction Deed," which purported to "correct that certain Deed executed between the parties on April 12, 1978, * * * clarifying the interest that each of the parties is to receive herein." It provided:

> "[Mother], hereinafter called grantor, for the consideration hereinafter stated, does hereby grant, bargain, sell and convey [the property] unto Tommy J. Holbrook, Beverly G. Holbrook, H&W, [u]ndivided 1/4 interest as tenants by the entirety and C. Kenneth Cantrell, and Durene A. Cantrell, H&W, [u]ndivided 1/4 interest as tenants by the entirety."

Although the correction deed provided that the couples would hold their quarter shares of the property as tenants by the

entirety, it did not expressly say whether all of the grantees
would hold the whole property as joint tenants with the right
of survivorship or as tenants in common.[1] Plaintiffs did not
sign the 1983 deed but were aware that mother had executed
it.

Mother died in 1995, and a dispute over her interest
in the property ensued.[2] Because the 1978 deed plainly estab-
lished a joint tenancy with the right of survivorship, plain-
tiffs maintained that mother's interest in the property passed
directly to them on her death. Other beneficiaries (defen-
dants) claimed that the 1983 deed created tenancies by the
entireties as to the two married couples but created a tenancy
in common among all of the grantees. Under defendants' the-
ory, mother's share of the property would not pass to plain-
tiffs pursuant to their right of survivorship under the 1978
deed but would pass to defendants either as beneficiaries of
her estate or as beneficiaries of the 1994 trust.

In 1996, plaintiffs brought an action to quiet title
and for a declaration of their ownership interest in the prop-
erty. They argued that, once the 1978 deed was executed and
delivered, mother could not unilaterally divest the grantees
of the interests that the deed conveyed, including the right of
survivorship. At the close of plaintiffs' case, defendants
moved for a directed verdict, arguing, among other things,
that plaintiffs' claims were barred by laches. More specifi-
cally, they asserted that, because the 1983 deed did not
expressly mention a type of tenancy or the right of survivor-
ship, it created a tenancy in common by default. *See* ORS
93.180 (conveyance creates a tenancy in common unless it
"clearly and expressly declare[s] * * * that the grantees * * *
take the lands with right of survivorship"). Defendants
argued that, by waiting until after mother's death (more than

---

[1] In 1990, Tommy Holbrook executed a deed that conveyed his interest in the
property to Beverly, who became known as Beverly Hilterbrand some time before
this case commenced.

[2] Although the record is not fully developed on this issue, both parties refer to
two trusts created by mother between 1989 and 1994. According to defendants, in
the 1989 trust agreement, mother purported to convey "an undivided one-half
interest" in the mobile home park (along with other property) to the trust, part of
which would pass to defendants upon mother's death.

12 years after the second deed was executed), plaintiffs lost their right to challenge the second deed's validity.

The trial court denied defendants' motion and, after considering the parties' evidence, entered judgment in favor of plaintiffs. In a letter opinion, the trial court reasoned that the 1978 deed established mother's intent to create a joint tenancy with the right of survivorship. Once that deed was delivered, mother could not unilaterally revoke it or defeat plaintiffs' survivorship interest. Defendants appealed, raising four assignments of error. We write to address only the issues raised by defendants' first and third assignments— whether mother could unilaterally correct the 1978 deed and whether plaintiffs' action is barred by laches. We affirm without discussion the other rulings that defendants assign as error.

■■ We begin with the question whether mother could unilaterally revoke the contingent remainders created by the 1978 deed.[3] As noted above, the 1978 deed conveyed the property to the grantees in joint tenancy with the right of survivorship, thereby creating "a tenancy in common in the life estate with cross-contingent remainders in the fee simple." ORS 93.180; *see Halleck v. Halleck et al*, 216 Or 23, 40-41, 337 P2d 330 (1959) (describing the interests as "co-tenants who hold concurrent life estates with contingent remainders").[4] ·Once the deed was executed and delivered, the interests conveyed to the grantees vested, including the right of survivorship, *see Holbrook v. Holbrook*, 240 Or 567, 570-71, 403 P2d 12 (1965); *Halleck*, 216 Or at 40, and mother could not unilaterally revoke it, *see Legler et al. v. Legler*, 187 Or 273, 299, 211 P2d 233 (1949). Mother and plaintiffs were thus cotenants, and, as the court held in *Halleck*, the "power to defeat the survivorship interest does not extend to co-tenants who hold concurrent life estates with contingent remainders. This

---

[3] Both plaintiffs and defendants agree that we review *de novo*.

[4] One of the incidents of the common-law joint tenancy was the power of each of the cotenants to sever the estate and convert it into a tenancy in common. *Halleck*, 216 Or at 40. As the court noted in *Halleck*, in Oregon, this form of joint tenancy was abolished by statute. *Id*. Accordingly, a conveyance will normally create a tenancy in common. However, a deed that, in express terms, conveys property in joint tenancy with right of survivorship creates concurrent life estates with cross-contingent remainders. *Id*. at 41.

contingent remainder which each co-tenant has cannot be defeated by any act of his co-tenant." *Halleck*, 216 Or at 40-41; *see also* George W. Thompson, 8 *Commentaries on the Modern Law of Property* § 4241, 120-22 (1963) (upon delivery, title irrevocably passes to the grantee and the "grantor cannot make any change in a deed after its delivery to the grantee").

Defendants advance two arguments to explain why the 1983 deed nonetheless supersedes the 1978 deed. First, defendants argue that *Myers v. Weems*, 128 Or App 444, 876 P2d 861 (1994), provides a basis for distinguishing *Halleck* and giving effect to the 1983 deed. In *Myers*, the plaintiff sought to cancel a deed that purported to make the plaintiff and the defendant joint tenants with the right of survivorship. *Id.* at 446. We found that neither the plaintiff nor the defendant (the plaintiff's daughter) intended that the deed would presently convey an interest in the property; rather, both parties viewed the deed as a means for the daughter to inherit the mother's property. *Id.* at 447-49. Given that evidence, we affirmed the trial court's decision to permit the plaintiff to cancel the deed. *Id.*

Although defendants do not argue, in so many words, that mother did not intend that the 1978 deed would presently convey an interest in the property to the grantees, they suggest as much by citing *Myers* and by referring to the 1983 deed as an expression of mother's true intent.[5] We disagree. When a deed is recorded, there is a presumption that the grantor intended the deed to take effect and to pass title to the grantees. *See Lancaster v. May, as Administrator*, 194 Or 647, 655, 243 P2d 268 (1952); *Halleck,* 216 Or at 28-29; *see also* Herbert Thorndike Tiffany, 4 *The Law of Real Property* § 1044, 401 (3d ed 1975) (recording "amounts in effect to a statement that such action on the part of the grantor shows, prima facie, an intention on his part that the instrument

___

[5] By extension, we presume that defendants would also contend that the 1978 deed is ineffective, because delivery, which is an essential element of a valid deed, requires a present intent to pass an interest in the property. *See generally Halleck*, 216 Or at 28-35. As the court noted, despite the term's common usage, delivery refers to "a mental, not a physical process [and] describes the passage of a property interest * * * from the grantor to the grantee. The interest passes if the grantor manifests the intention to pass it immediately." *Id.* at 28.

shall be legally operative"). The terms of the 1978 deed are unequivocal and suggest only that intent—*i.e.*, an intent to convey immediately a (present and future) interest to the grantees. Two additional factors confirm that conclusion: (1) The 1983 deed purports to "clarify" the 1978 deed in only minor respects and implicitly recognizes that some interest passed to the grantees in the 1978 deed; and (2) shortly after executing the 1983 deed, mother filed a quarterly gift tax return in which she stated that she had transferred the land to the grantees in 1978.[6] Because the 1978 deed was intended to presently convey an interest in the property to the grantees, *Myers* provides defendants no help.

Defendants advance a second argument. They appear to argue that, even if the 1978 deed made the grantees joint tenants with rights of survivorship, *Jones v. Bramwell et al.*, 111 Or 316, 226 P 694 (1924), recognizes that mother may "correct any mistake in the 1978 deed." They suggest that the 1983 deed was an attempt to do just that. Defendants read too much into *Jones*. *Jones* does not stand for the proposition that a party may unilaterally revoke a property interest created by an earlier deed. Rather, the defendants in *Jones* had filed two correction deeds, and the plaintiff brought an action to cancel the "so-called correction deeds" and remove the cloud those deeds cast on her title. *Id.* at 318-19. The court began its analysis by explaining that "[t]here is no serious contention on the part of the defendants * * * that the plaintiff is not entitled to a decree [canceling the defendants' correction deeds] unless the defendants are entitled to have the original deeds reformed because of the alleged mutual mistakes." *Id.* at 319.

*Jones* does not say that a grantor may unilaterally correct an earlier mistake in a deed, as defendants argue. Rather, the only issue, as the court framed it in *Jones*, was whether the original deeds should be reformed because of a mutual mistake. Not only does the decision in *Jones* not yield the proposition that defendants draw from it, but its reasoning does not advance defendants' argument here. Defendants

---

[6] We note that, even if there were an ambiguity in this regard, we generally would construe the ambiguity against the grantor and in favor of the grantees. *Hurd v. Byrnes*, 264 Or 591, 598, 506 P2d 686 (1973) (noting the general rule).

do not argue that there was any basis for reformation; that is, they never explain how the survivorship clause was a mutual mistake. *See Jones*, 111 Or at 319-22.[7] We agree with the trial court that the 1978 deed created a joint tenancy with a right of survivorship and that mother could not, in the 1983 deed, unilaterally revoke or alter the contingent remainders that she previously had given plaintiffs.

■ ■ The remaining question is whether laches barred plaintiffs from bringing this action in 1996 to determine the effect of the 1983 deed. Laches will bar a party from asserting an equitable claim when three elements are present. The first two are "full knowledge of all the facts concurring with delay for an unreasonable time." *Kelly v. Tracy*, 209 Or 153, 172, 305 P2d 411 (1956); *see also Derenco v. Benj. Franklin Fed. Sav. and Loan*, 281 Or 533, 566-67, 577 P2d 477, *cert den* 439 US 1051 (1978) ("[l]aches requires full knowledge"). That is, the period of delay does not begin until knowledge of all relevant facts is acquired. *Vossen v. Forrester*, 155 Or App 323, 327-28, 963 P2d 157 (1998), *rev den* 328 Or 275 (1999). As we stated in *Nyman v. City of Eugene*, 32 Or App 307, 320, 574 P2d 332 (1978), *aff'd on other grounds* 286 Or 47, 593 P2d 515 (1979):

> "[L]aches will not begin to run until the plaintiff has actual knowledge, *Wills v. Nehalem Coal Co.*, 52 Or 70, 96 P 528 (1908), or is chargeable with knowledge [the plaintiff] might have obtained upon inquiry if [the plaintiff] had knowledge of facts which would have put a duty to inquire on a person of ordinary intelligence. *In re Webster's Estate*, 74 Or 489, 145 P 1063 (1915)."

*See also Loomis v. Rosenthal*, 34 Or 585, 602-03, 57 P 55 (1899). The third element is substantial prejudice. *Stephan v. Equitable S & L Assn.*, 268 Or 544, 569, 522 P2d 478 (1974). "[T]he delay must result in substantial prejudice to the defendant to the extent that it would be inequitable to afford the

---

[7] Indeed, defendants identify no basis for saying that giving the grantees a right of survivorship was even a unilateral mistake. Not only were the terms in the 1978 deed unmistakable, but it appears from the face of the 1983 deed that mother intended to clarify only the percentage of property each of the grantees would receive, not whether the grantees held the property as tenants in common or with the right of survivorship.

relief sought against the party asserting laches as a defense."
*Id.*

 Laches depends on the circumstances of each case
and will not be "applied mechanically to every situation"
merely because a party has acted with neglect. *McIver v.
Norman*, 187 Or 516, 544, 213 P2d 144 (1949). In that sense,
laches differs from legal defenses, such as the statute of lim-
itations. *Rise v. Stickel*, 59 Or App 675, 684, 652 P2d 364, *rev
den* 294 Or 212 (1982). The analogous statute of limitations
does, however, provide guidance in determining whether an
unreasonable period of time has passed. *Id.* And, when an
action is commenced after the expiration of the analogous
statute of limitations, the plaintiff has the burden of proving
the absence of laches. *Id.*[8]

 In this case, defendants argue that laches began run-
ning in 1983 when mother executed the second deed and
that, because plaintiffs delayed longer than the analogous
statute of limitations in initiating this action, "plaintiff[s]
ha[ve] the burden of explaining the prolonged delay." *See
Oregon State Bar v. Wright*, 309 Or 37, 42-43, 785 P2d 340,
*cert den* 498 US 829 (1990). Defendants count from the wrong
date. The 1983 deed may have put plaintiffs on record notice
of a possible problem with their title (or, more accurately, of a
potential challenge to their future interests), but laches did
not begin to run from that date. *Assn. of Unit Owners v. Far
West Federal Bank*, 120 Or App 125, 131-32, 852 P2d 218
(1993). Rather, laches began to run from the date that plain-
tiffs' future interests were "actually repudiated or chal-
lenged." *Id.*[9] We need not decide whether plaintiffs' future
interests were "actually repudiated or challenged" when
mother created the two trusts in 1989 and 1994 or whether
plaintiffs' interests were not actually challenged until after

---

[8] When an action is commenced within the analogous statute of limitations,
the burden of proving laches remains on the defendant.

[9] We explained in *Assn. of Unit Owners*:

"[A] property owner who has record notice of 'possible problems' with the
owner's title may, but is not required to, bring an action to eliminate those
problems. When a property interest is actually repudiated or challenged, or an
adverse claim is asserted against the interest, the property owner is obligated
to act within a reasonable time to protect the owner's interests."

120 Or App at 131 (citations omitted).

mother's death in 1995. In either event, plaintiffs brought their claim within the analogous limitations period,[10] and the burden of proving laches remained with defendants. It did not shift to plaintiffs.

█ In this case, defendants failed to establish that any delay prejudiced them to the extent that it would be inequitable to permit plaintiffs' action to proceed. *Hanns v. Hanns*, 246 Or 282, 305-10, 423 P2d 499 (1967); *County of Lincoln v. Fischer et al*, 216 Or 421, 447-48, 339 P2d 1084 (1959). It is true, as defendants note, that "the original grantor of the [1983] deed is now deceased and unavailable as a witness to the transaction," and it may be, as defendants reason, that "[mother] could have testified as to her knowledge and intentions * * * [and] plaintiffs' reactions" to the 1983 deed. As explained above, however, the evidence in the record establishes that mother intended to deliver the 1978 deed. That being so, mother could not later unilaterally revoke or alter the interests that deed conveyed, and her intent concerning the 1983 deed is irrelevant. *See Holbrook*, 240 Or at 570-71; *Halleck*, 216 Or at 40-41.

While the loss of a witness will often be prejudicial, that is not always so. *See Woodriff v. Ashcraft*, 263 Or 547, 554, 503 P2d 472 (1972) (concluding that the death of a witness was not prejudicial when the dispute was primarily legal and the parties had assented to most of the facts); *May v. Roberts*, 133 Or 643, 659-60, 286 P 546 (1930) (rejecting the defendants' laches argument based on the contention that "valuable evidence was lost by the death of [a witness]"). Defendants have offered no persuasive evidence that the loss of mother's testimony prejudiced them in such a way that it would be inequitable to permit plaintiffs' action to go forward. The trial court correctly held that laches did not bar plaintiffs' action and that mother's interest in the property passed to plaintiffs on her death.

Affirmed.

---

[10] In this case, the analogous statute of limitations is 10 years. *See* ORS 12.040 (applying 10-year period from ORS 12.050 to actions "for the determination of any right or claim to or interest in real property"). Plaintiffs brought this action approximately 13 years after mother executed the 1983 deed but within 10 years after she created the trusts and within approximately one year after her death.