Argued and submitted March 2, 2006, affirmed March 28, 2007

In the Matter of the Marriage of

R. Todd KIRKENDALL,
*Respondent,*

*and*

Lisa Ann KIRKENDALL,
*Appellant.*

03P-2418; A127290

156 P3d 84

Kevin T. Lafky argued the cause for appellant. With him on the briefs were Mindy Stannard and Lafky & Lafky.

Dennis V. Messoline argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

Wife appeals from a judgment of dissolution of marriage, assigning error to the trial court's distribution of real and personal property. We review *de novo* but give deference to the trial court's implied credibility findings. ORS 19.415(3); *Lind and Lind*, 207 Or App 56, 58, 139 P3d 1032 (2006). We affirm.

Husband and wife married on September 29, 2000. As the trial court observed, "during the period of the marital relationship there was cohabitation and extensive commingling of assets and activities between" husband and wife and wife's mother and stepfather, the Laubes. At the time of the marriage, both parties were living with and paying rent to the Laubes. Soon thereafter, the parties purchased and moved to the marital residence (the Lakeview home). A short time later, the Laubes purchased and moved to the Summit Avenue property, which was closer to the Lakeview home than their previous home was. The Summit Avenue property was purchased in the names of wife and her mother, with a right of survivorship. Wife testified that the Summit Avenue property was placed in both their names so that wife would be able to care for her stepfather if anything should happen to her mother. Husband, however, testified that the property was placed in both names so that wife would own the property when her mother died. Husband further testified that he contributed significant, uncompensated time and labor to remodeling the Summit Avenue property; wife and her mother minimized the amount of work that husband did, and wife's mother testified that he had been paid for at least some of that work.

Husband and wife later acquired the Glen Creek property, a lot adjacent to the Lakeview home. Wife's mother used the Summit Avenue property as security to obtain a $59,000 line of credit, of which approximately $49,000 was used to finance the Glen Creek purchase and $10,000 was used to pay off a vehicle owned by wife. The parties dispute whether husband and wife were expected to pay off the entire $59,000 line of credit, although they did make the monthly payments on that debt. According to husband, at least, he

and wife had planned to remodel the Lakeview home so that the Laubes could live with them while a new house was being built on the Glen Creek lot. The Summit Avenue property then would be sold to finance the construction costs of the new house, and both families would live together permanently in the new residence, with the Laubes residing in the basement.[1] According to husband, he and wife would have owned the new residence and "were going to sign a contract with [wife's mother] so that she could never be removed" from the house. By the time of trial, however, the parties were trying to sell the Glen Creek lot.

At trial, wife contended that her mother is the sole owner of the Summit Avenue property, which therefore is not a marital asset. Additionally, she requested that the proceeds from the sale of the Glen Creek lot first be used to pay the line of credit that her mother had obtained to finance its purchase and that the remainder of the proceeds be divided equally between the parties. Husband asserted, however, that the inclusion of wife's name on the deed for the Summit Avenue property and the intent to use proceeds from its sale to finance construction of a new marital home made the property a marital asset. He contended that wife's one-half interest in that property should be factored into the equalizing of the assets. Husband believed that the proceeds from the sale of the Glen Creek lot should be divided equally, disregarding the line of credit secured by the Summit Avenue property.

The trial court concluded that a one-half interest in the Summit Avenue property is a marital asset, because wife is a record owner with a right of survivorship and because of the parties' plans to cohabitate with the Laubes. The court awarded wife the interest in the Summit Avenue property, adjusting its value to reflect half of the line-of-credit encumbrance. The court concluded that, given that adjustment, the proceeds from the sale of the Glen Creek lot should be divided equally without considering the line of credit any further.

---

[1] Wife appears to agree that there was some discussion about such a plan but suggests that husband was the only one in favor of it. Her mother likewise testified that husband had such a plan, but says that she never agreed to it. Ultimately, the trial court believed husband regarding the plan.

On appeal, wife contends that the trial court erred (1) by finding the Summit Avenue property to be a marital asset or, alternatively, if it is a marital asset, by not finding that she had overcome the presumption of equal contribution, and (2) by ordering that proceeds from the sale of the Glen Creek property be split evenly without first paying back the loan obtained by wife's mother. For the reasons set forth below, we affirm.

■ We first consider the trial court's decision to treat the one-half interest in the Summit Avenue property as a marital asset. It is undisputed that wife acquired title to an interest in the property during the marriage. The deed is presumptive proof of ownership. *See Hilterbrand v. Carter*, 175 Or App 335, 340, 27 P3d 1086 (2001) ("When a deed is recorded, there is a presumption that the grantor intended the deed to take effect and to pass title to the grantees." (Citations omitted.)). At trial, the parties offered conflicting testimony about their intentions regarding the Summit Avenue property, and the trial court's findings are more consistent with husband's description of events. Taking into account the presumptive effect of the deed, as well as the trial court's implicit credibility finding in favor of husband, we conclude that the property is a marital asset to which the presumption of equal contribution applies.

■ "There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held." ORS 107.105(1)(f). A party seeking to overcome that presumption must prove by a preponderance of the evidence that the other spouse did not equally contribute, economically or noneconomically, to the acquisition of the asset. *Kunze and Kunze*, 337 Or 122, 134, 92 P3d 100 (2004).

According to wife, she has overcome the presumption of equal contribution, because there is no evidence that husband ever resided at the Summit Avenue property or contributed financially to its acquisition or upkeep. Additionally, she relies on the lack of any evidence that the Laubes intended to give him any interest in the property. Husband disputes wife's argument, claiming that he contributed time

and labor to remodeling the property and assisted the Laubes in other ways.

Wife fails to meet her burden to show any error in the trial court's application of the presumption. Indeed, her arguments rely more on a lack of evidence to support the presumption than on a preponderance of evidence to rebut it. In this case, the parties' frequent cohabitation and commingling of funds with the Laubes support the trial court's determination that a plan existed to use the Summit Avenue property as part of the marital estate in order to finance a new home for all involved. Accordingly, we see no reason to disturb the trial court's application of the presumption of equal contribution as to the Summit Avenue property.

■ Wife also assigns error to the trial court's determination that proceeds from the sale of the Glen Creek lot should be divided equally, without first paying off the line of credit obtained by her mother to finance its purchase. Wife contends, in essence, that the entire line of credit should be considered a marital debt for one of three alternative reasons: (1) a valid oral contract between the parties and wife's mother, (2) an implied-in-fact contract between the parties and wife's mother, or (3) the doctrine of part-performance. Wife and her mother both testified that husband agreed that he and wife would be responsible for repayment of the line of credit.

Husband responds that he and wife did not promise to repay the debt. Viewing the line of credit as entirely wife's mother's debt, he contends that the court lacks jurisdiction to use the proceeds of marital property to pay a debt owed by a third party. He further argues that the trial court's accounting of half the line of credit as an encumbrance on the Summit Avenue property was equitable in light of the "disappearance" of other assets that were allegedly used by wife's mother without his knowledge or consent, and the loss of certain stock profits that he attributes to wife's actions.

■ As part of its authority to divide property, a court may divide the debts that the parties incur during the marriage. *McInnis and McInnis*, 62 Or App 524, 527, 661 P2d 942 (1983). Additionally, "where the credibility of witnesses is at issue, we generally have declined to second-guess a trial

court's characterization—either as loans or gifts—of advances made to spouses by other family members." *Shlitter and Shlitter*, 188 Or App 277, 285, 71 P3d 154 (2003). Here, although the trial court did not make an explicit finding regarding whether the line of credit was a marital debt owed to wife's mother or a gift from her, it treated the line of credit as an encumbrance on the Summit Avenue property. Moreover, the court found that the parties and the Laubes planned to build a new home on the Glen Creek lot where the parties and the Laubes would permanently reside and planned to sell the Summit Avenue property in order to finance the construction of that new home. We conclude that the trial court implicitly found, consistently with husband's account of events, that the funds from the line of credit were not a loan to the parties but rather a contribution to their plans to set up a joint household with wife's parents. Because that finding is based on the credibility of the witnesses, we decline to second-guess it. The trial court did not err in its disposition of the Glen Creek property.

We reject without discussion wife's other assignments of error.

Affirmed.